1  JAME LYNN GALLIAN
   16222 Monterey Ln. Unit 376
2  Huntington Beach. CA 92649
   (714) 321-3449
3  jamiegallian@gmail.com

4  Debtor - IN PRO PER

5

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   SANTA ANA DIVISION

11                                  Case No. 8:21-ap-01095

12  In re                           Chapter 7 CASE NO. 8:21-BK-11710-SC

13  JAMIE LYNN GALLIAN,             **OPPOSITION TO PLAINTIFF
                                    HUNTINGTON BEACH GABLES
14                                  HOMEOWNERS ASSOCIATION
                                    MOTION TO CONTINUE PRE-TRIAL
15         Debtor.                  CONFERENCE DUE TO STATE COURT
                                    ACTION JURY TRIAL 8/12/2024
16                                  30-2020-01163055-CU-OR-CJC:
                                    MEMORANDUM OF POINTS AND
17                                  AUTHORITIES; REQUEST FOR
                                    JUDICIAL NOTICE AND DECLARATION
18                                  OF JAMIE LYNN GALLIAN IN SUPPORT
                                    THEREOF
19
                                    Date:  June 18, 2024
20                                  Time:  1:30 p.m.
                                    Place: Courtroom 5C
21
                                    411 W. Fourth Street,
22                                  Santa Ana, California 92701

23       PLEASE TAKE NOTICE  Jamie Lynn Gallian (the "Debtor), hereby submits this

24  opposition to Plaintiff Huntington Beach Gables Homeowners Association Motion to Continue

25  Pre-Trial Conference until October 22, 2024. It appears to conflate with a State Court Action.

26       Debtor wishes to inform the Court that the Plaintiff  Huntington Beach Gables

27  Homeowners Association filed a **[Pre-Petition]** Cross-Complaint against Debtor, State Court

28  Action 30-2020-01163055 which is set for a jury trial to begin August 12, 2024, CJC-21.

    Trustee has not abandon the State Court Action.Trustee abandon claim against Randall Nickel

                                         1

                                                                              0001

## MEMORANDUM OF POINTS AND AUTHORITIES

Over two years ago, the Honorable Erithe A. Smith issued a Tentative Ruling on February 17, 2022 and Order entered shortly thereafter: **EXHIBIT 1 FR Docket #45.**

**"Deny motion without prejudice to re-filing the motion if the cause of action for voidable transfer is abandoned or deemed abandoned by the chapter 7 trustee pursuant to 11 U.S.C. 554. "  NOTHING HAS CHANGED IN OVER TWO YEARS;  THE TRUSTEE [HAS NOT] ABANDON THE LITIGATION LISTED IN DEBTOR'S PETITION.**

### A. Basis for Tentative Ruling

It is well established that a fraudulent transfer claim that existed **prepetition** becomes property of the bankruptcy estate upon the filing of the bankruptcy petition. 11 USC 541 (a); In re Vandevort, 2009 WL 7809927 (9th Cir. BAP 2009). In Vandervort, the BAP held that the debtor's filing of the bankruptcy petition did not cause the creditor to lose its standing. Rather, it cited with approval the First Circuit's decision Unisys Corp. v. Dataware Prods., Inc., 848 F.2d 311, 313-14 (1st Cir.1988), in which the Court there ruled that a creditor who filed a prepetition fraudulent transfer action did not "lose" standing; to the contrary, upon the abandonment of the fraudulent transfer causes of action by the trustee, those causes of action "reposed" in the creditor "free of any stay." Id. at 314. The creditor could therefore pursue its prepetition fraudulent transfer litigation upon abandonment of the claim by the trustee.

In In re Zwirn, 362 B.R. 536, 541--42 (Bankr.S.D.Fla.2007), a creditor brought a prepetition fraudulent transfer against the debtor and other defendants. The bankruptcy court held that the chapter 7 trustee had exclusive standing to prosecute those claims during the pendency of the case and therefore could settle those claims over the objection of the creditor, noting that the trustee was free to file his own fraudulent transfer claim or to intervene in the state court fraudulent transfer action. In Sturgeon State Bank v. Perkey (In re Perkey), 194 B.R. 846,851 (Bankr.W.D.Mo.1996), the court held that the trustee had the right to intervene in a fraudulent conveyance action commenced by a creditor as long as the creditor waived a potential conflict of interest problem. A review of published California state cases reflect that bankruptcy trustees have been substituted as the proper plaintiffs in state court fraudulent transfer cases filed by the debtor's creditors. See Chichester v. Mason, 43 Cal.App.2d 577, 111 P.2d 362 (1941 ); Wells V. Lloyd, 35 Cal.App.2d 6, 94 P.2d 373 (1939).

2

1
2
3

Under Section 554, a claim may be abandoned by motion of the trustee, the debtor, or other party in interest upon a showing that the claim is burdensome to the estate or that it is of inconsequential value. The claim may also be deemed abandoned by operation of law if the claim is scheduled by the debtor and the case closes without prosecution of the claim by the trustee.

4

**B    Bankruptcy Background**

5
6

On July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Code").

7
8
9
10
11
12
13
14
15
16
17
18
19

On October 18, 2021, Plaintiff filed a Adv. Complaint to (1) Set Aside Voidable Transfer; (2) for Declaratory Relief Establishing Validity of Lien (Monetary Judgment(s) Unsecured Debt 9/27/2018; 12/4/2018; 3/29/2019; 5/3/2019.  After Debtor sold her home, on November 8, 2018, Plaintiff in State Court Case No. 30-2017-00913985, filed an Ex-parte Motion to Freeze Defendant Jamie L Gallian Sale Proceeds from the sale of her Previous Residence unencumbered on October 31, 2018, with a Recorded Homestead, re 4476 Alderport Dr. APN 937-63-053, The Plaintiff's Motion was denied in its *entirety*. **Exhibit 2**  On October 1, 2020, the Bona Fide Purchaser filed a State Court Action against the Gables HOA and its Board Members, Case No.30-2020-01163055-CU-OR-CJC; In retaliatory fashion, the Gables HOA assigned their money judgment to Feldsott & Lee, APC  23161 Mill Creek Dr. #300 Laguna Niguel, CA 92653, who in turn filed a Cross-Complaint against Jamie L Gallian and Randall Nickell, the buyer of Gallian's unencumbered primary residence sold to Nickel on October 31, 2018, with State Court Approval, Honorable James L. Crandall, November 1 and November 9, 2018.  **Exhibit 2 Reporters Transcript(s)**

20
21
22
23
24
25

Jeffrey I. Golden was appointed and now serves as the Chapter 7 trustee (the "Trustee") for the Debtor's bankruptcy estate (the "Estate"). Trustee Golden held no less than 14 341 Meetings unnecessarily.  Pursuant to an order entered by the Court on or about June 1, 2022, the Trustee employed Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), as his general counsel in this matter, **Nunc Pro Tunc** back to January 2022. When the Motion was filed the attorney's already exceeded $20,000.00 in fees on a no-asset case.

26
27
28

On Octobver 18, 2021, Trustee and Debtor entered into a Stipu;lation, whereas Debtor agreed to extend the time for Trustee to file an objection to Debtors Homestead Exemption and or object to Debtors Discharge under §727.  The Order was entered by the Honorable Erithe A. Smith and included November 17, 2021 for the Trustee to file any objection.

On or about May 23, 2023, the Court issued a Memorandum of Decision denying the Debtor's discharge.   The Debor timely filed a Notice of Appeal to the United States District Court which is currently on appeal.

The Debtor's schedules list her interest in the Space 376 Property as an asset of the Estate (*docket no. 1 and 39*).  The Debtor's schedules also include a claimed homestead exemption in the Property in the amount of $600,000 ("First Amendment") *docket no. 15 and 39*) .

On or about May 12, 2022, Houser untimely filed a motion objecting to the Debtor's homestead exemption in the Property (*docket no. 95*) (the "Exemption Motion"), which was set for hearing on July 21, 2022.  The Trustee joined in the Exemption Motion without a stated reason.

On or about July 26, 2022, before the Court's Order on the Exemption Motion was entered the Debtor filed her Motion for Reconsideration (*docket no. 157*) (the "Motion for Reconsideration").  On July 28, 2022, Trustee filed a Motion to Employ Real Estate Brokers. *DOC 162.* Debtor filed a Comprehensive Opposition; the Hon. Scott C. Clarkson denied the Trustee's Motion.  The Court correctly opined the Debtor's entitlement to an Automatic Homestead Exemption. Debtor and her Family were protected from homelessness.

The Debtor's Motion for Reconsideration was initially heard by the Court on August 18, 2022, and continued for Oral Argument to September 22, 2022, at which time it was taken under submission.  *(docket no. 306)* **Exhibit 4**

Thereafter, on or about December 19, 2022, the Court entered its Memorandum of Decision (*Doc. 273,)* and Order granting the Debtor's Motion for Reconsideration and allowing the Debtor's homestead exemption in the amount of $600,000 (*docket no. 274*) (the "Reconsideration Order") .

On or about December 29, 2022, Houser filed a timely notice of appeal from the Reconsideration Order (*docket no. 280*), before the District Court as Case No. 8:23-cv-00001-DSF (the "Homestead Appeal"). On November 1, 2023, the district court entered its Order Reversing the Order of the Bankruptcy Court and Remanding for Further Proceedings. ("Reversal Order")

On May 15, 2024, the Bankruptcy Court, Honorable Erithe A. Smith entered ORDER REGARDING "ORDER REVERSING THE ORDER OF THE BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS" ENTERED BY THE DSTRICT COURT ON NOVEMBER 1, 2023. **Conclusion:** The Court finds that Debtor held sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal.Civ Proc. Code 704.720(a).

**C.**     **The Trustee's Adversary Proceeding**

Almost two years after the Chapter 7 petition was filed, July 9, 2021, (*docket 1*) on or about June 30, 2023, the Trustee filed a complaint against a number of the Debtor's insiders, [but not Debtor], commencing adversary proceeding no. 8:23-ap-01064-SC (the "Adversary Proceeding"), seeking to avoid, recover, and preserve various transfers.  However, the transfer was made and perfected in 2019 on the face of the Certificate of Title for the property. Debtor testified at trial on April 23, 2023, she is also [the only] Lender and Holder of the 11/16/2018 **Security Agreement** related to the Property. A copy of the Trustee's complaint is attached as Exhibit "5' hereto.   The Adversary Proceeding also seeks to recover $225,000 from the Debtor's single member LLC, J-Pad LLC, an entity that was Dissolved and Terminated with the California Secretary of State on or about November 21, 2021, with a Filed Copy into the bankruptcy case (*docket no.      ) with* Notice to the Trustee. *(docket no.     )*  Trustee did not revive the entity's sued  before filing his adversary complaint against J-Pad. LLC who is not a party to the Security Agreement on June 30, 2023.

0005

1

## **CONCLUSION**

**1.**      The Debtor respectfully requests that the Court deny the Plaintiff Motion to Continue

Pre-trial.

2.      The Debtor listed the State Court Action in her Petition and Schedules.

Debtor respectfully requests the Court to determine the Trustee's position with respect to his

representtion of the estate whether he intends to abandon the estates interest in the State Court

Action 30-2020-01163055, filed by the Huntington Beach Gables over two years ago against

Debtor as a Defendant.

3.      The Plainitff apparently mislead the State Court Judicial Officer Honorable Deborah

Chuang Servino, Dept. CJC-21, into believing the Plaintiff received relief from stay, which is

true, however the Trustee only abandon any claim against Randall Nickell [Only], not Debtor

Jaie Gallian.

The Debtor requests such other and further relief that this Court may deem just and proper.

DATED:  June 5, 2024

*Jamie Lynn Gallian*

8

## **REQUEST FOR JUDICIAL NOTICE**

Jamie Lynn Gallian (the "Debtor), requests that the Court take judicial notice of the following facts.

1.      On July 9, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Code").

2.      Jeffrey I. Golden was thereafter appointed and now serves as the Chapter 7 trustee for the Debtor's bankruptcy estate and held no less than approximately 14 341 Meetings.

3.      On or about January 2022, Plaintiff filed Motion for RFS.

4.      On or about February 17, 2022, Hon. Erithe A. Smith issued her Tentative Ruling to deny Plaintiff's Motion based on In re Vandevort 2009 WL 7809927 (9th Cir. BAP 2009).

3.      Pursuant to an Order June 1, 2022, by the Court, entered Nunc Pro Tunc back to January 2022, the Trustee on a no-asset Chapter 7 Petition, choose to employ Danning, Gill Israel & Krasnoff, LLP ("Danning Gill"), on a straight forward Chapter 7 as Counsel.

4.      According to the Court's claims register, a copy of which is attached as Exhibit "1" hereto, the Debtor's unsecured creditors consist of $903,752.13 in filed proofs of claim, which amount does not include the accrued administrative expenses of the Trustee and his professional Danning Gill.

5.      The Debtor scheduled her interest in 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 (the "Property") as an asset of the Estate (*docket no. 1 and 39*).

6.      The Debtor claimed a homestead exemption in the Property of $600,000 on her schedules (*docket no. 15 and 39*) .

7.      On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser") timely filed a motion objecting to the Debtor's homestead exemption in the Property (*docket no. 95*) (the "Exemption Motion"), which was set for hearing on July 21, 2022.

8.      On or about July 21, 2022, the Court granted the Exemption Motion and sustained Houser's objection to the Debtor's homestead exemption on the record at the hearing.

9.      On or about July 26, 2022, before the Court's order on the Exemption Motion could be entered, the Debtor filed her Motion for Reconsideration (*docket no. 157*) (the "Motion for Reconsideration").  eventually GRANTED on May 15, 2024, by the Honorable Erithe A. Smith.

9

10.     The Motion for Reconsideration was initially heard by the Court on or about August 18, 2022, and again September 22, 2022, at which time it was taken under submission.

12.     Thereafter, on or about December 19, 2022, the Court entered its order granting the Debtor's Motion for Reconsideration and allowing the Debtor's homestead exemption in the amount of $600,000 (*docket no. 274*) (the "Reconsideration Order") .

13.     On or about December 29, 2022, Houser filed a timely notice of appeal from the Reconsideration Order (*docket no. 280*), which appeal is now pending before the District Court as Case No. 8:23-cv-00001-DSF (the "Homestead Appeal"). Debtor objected to Houser Bros. standing in the District Court.

14.     On or about June 30, 2023, the Trustee filed a complaint against a number of the Debtor's insiders, commencing adversary proceeding no. 8:23-ap-01064-SC (the "Adversary Proceeding"), seeking to avoid, recover, and preserve various transfers that the Debtor made to her insiders relating to the Property.  A copy of the Trustee's complaint, commencing the Adversary Proceeding, is attached as Exhibit "2' hereto.

15.     On or about May 23, 2023, the Court issued a memorandum of decision denying the Debtor's discharge.  Debtor timely appealed to the U.S. District Court and is still under submission.

16.     On May 15, 2024, the Court Honorable Erithe A. Smith entered an Order entitling Debtor to her Automatic Homestead Exemption in the amount of $600,000.00.

DATED:  June 5, 2024

*Jamie Lynn Gallian*

10

# EXHIBIT "1"

# EXHIBIT  3

# 10/31/2018- A.P.N. 937-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 ALDERPORT DR.

HUNTINGTON BEACH, CA 92649

# TAX ASSESSOR'S DEBTOR'S HOMESTEAD EXEMPTION IN RESIDENCE SOLD ON 10/31/2018.

0010



**Shari L. Freidenrich, CPA**
Orange County Treasurer - Tax Collector
P.O. BOX 1438 • Santa Ana, CA 92702-1438
625 N. Ross Street, Building 11, Room 636, Santa Ana
Office Hours: 8:00 AM-5:00 PM Monday - Friday
Phone Hours: 9:00 AM-5:00 PM (714) 834-3411
ocgov.com/octaxbill

## 2018-19 SECURED PROPERTY TAX BILL

For Fiscal Year Beginning July 1, 2018 and Ending June 30, 2019

0000442-0000442 STMT----- 740701 OCT026
BWNLBHV ********AUTO**ALL FOR AADC 926
#9376 3053 0020 183#

HOUSER BROS CO
GALLIAN JAMIE L
4476 ALDERPORT DR UNIT 53
HUNTINGTON BEACH CA 92649-2288



### OWNER OF RECORD AS OF 12:01 AM, JANUARY 1, 2018

HOUSER BROS CO

## CORRECTED SECURED TAX BILL

### DID YOU KNOW?

Sign up to receive a text/email due date reminder at ocgov.com/taxreminder

Pay online at ocgov.com/octaxbill to receive same day credit, no service fee by eCheck and an emailed receipt.

Mailed payments must have a USPS postmark on or before the last timely payment date. If you wait until the last day to mail your payment, get your envelope hand-stamped with a postmark to ensure it is timely.

Major construction has eliminated close parking to our office - please pay online!

### PROPERTY LOCATION

4476 ALDERPORT 53 HUNTINGTON BEACH

### ASSESSED VALUES & EXEMPTIONS AS OF JANUARY 1, 2018

| DESCRIPTION | FULL VALUE | COMPUTED TAX |
|---|---|---|
| LAND | 197,735 | |
| IMPROVEMENTS - BUILDING | 121,658 | |
| TOTAL VALUES: | 319,393 | 3,853.78 |
| HOMEOWNER EXEMPTION | -7,000 | -76.78 |
| TOTAL NET TAXABLE VALUE: | 312,393 | 3,777 |

| PARCEL NO. (APN) | TAX RATE AREA | 1st Installment DUE AT TIME | 2nd Installment DUE 4/10/19 | TOTAL FACTORS DUE/BILLING AMOUNT BY 4/10/19 |
|---|---|---|---|---|
| 937-630-53 | 04-007 | $1,888.50 | $1,888.50 | $3,777.00 |

### IMPORTANT INFORMATION

If you sold this property or no longer own it, you can disregard this bill. Property taxes are the responsibility of the new owner. Contact the Office of the Assessor at (714) 834-2727 regarding ownership changes.

Enrollment date 10/04/18.

ORDER # REVISION 01 DATE 08/30/18 2018 CORRECTION OF ASSESSOR ASMNT INFO

Corrected Billing

### VOTER APPROVED TAXES AND SPECIAL ASSESSMENTS

| SERVICE AGENCY | RATE | VALUE | TAXES |
|---|---|---|---|
| BASIC LEVY RATE | 1.00000 | 312,393 | 3,123.93 |
| COAST COMM COLLEGE DIST | .03052 | 312,393 | 95.34 |
| OCEAN VIEW SD 2016, SR 2017A | .02404 | 312,393 | 75.10 |
| HUNTINGTON BCH UNION HS | .02388 | 312,393 | 74.60 |
| HUNTINGTON BEACH EMPLOYEE RETIREME | .01500 | 312,393 | 46.86 |
| METRO WATER D-MWDOC | .00350 | 312,393 | 10.93 |

| SPECIAL ASSESSMENT CHARGES | PHONE NO. | |
|---|---|---|
| MOSQ,FIRE ANT ASSMT | (800)273-5167 | 4.49 |
| VECTOR CONTROL CHG | (800)273-5167 | 0.67 |
| MWD WATER STDBY CHG | (866)807-6864 | 10.08 |
| OCSD SEWER USER FEE | (714)593-7281 | 335.00 |

| TOTAL CHARGED | 1.09694 | | 3,777.00 |

FOR DETAILS OF TAX TYPES, VISIT OUR WEBSITE AT OCGOV.COM/OCTAXBILL

THERE WILL BE A $26.00 FEE FOR EACH PAYMENT RETURNED UNPAID BY YOUR BANK FOR ANY REASON
RETAIN TOP PORTION FOR YOUR RECORDS – IF PAYING BY CHECK, YOUR CANCELLED CHECK IS YOUR RECEIPT OR PAY ONLINE AND RECEIVE AN EMAILED RECEIPT

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
### CENTRAL JUSTICE CENTER

## MINUTE ORDER

DATE: 11/09/2018                 TIME: 08:30:00 AM          DEPT:  C33

JUDICIAL OFFICER PRESIDING: James Crandall
CLERK:  Eric Yu
REPORTER/ERM: Janet (ACRPT) Taylor CSR# 9463
BAILIFF/COURT ATTENDANT:  Julie Carney

CASE NO: **30-2017-00913985-CU-CO-CJC** CASE INIT.DATE: 04/11/2017
CASE TITLE: **The Huntington Beach Gables Homeowners Association vs. Bradley**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Contract - Other

---

EVENT ID/DOCUMENT ID: 72926149
**EVENT TYPE**: Ex Parte
MOVING PARTY: The Huntington Beach Gables Homeowners Association
CAUSAL DOCUMENT/DATE FILED: Ex Parte Application - Other, 11/07/2018

---

**APPEARANCES**
BRENDA K. RADMACHER, specially appearing for Gordon & Rees LLP, present for Cross - Defendant,Plaintiff(s).
PEJMAN D. KHARRAZIAN, specially appearing for Epsten Grinnell & Howell, APC, present for Cross - Defendant,Plaintiff(s).
Jamie L. Gallian, self represented Cross - Defendant, present.

Ex-Parte application for TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INUNCTION TO ENJOIN DISBURSEMENTS FROM PROCEEDS OF SALE OF REAL PROPERTY, OR ALTERNATIVELY, FOR AN ORDER REQUIRING GALLIAN TO DEPOSIT AT LEAST $52,145.27 WITH THE COURT is requested by the Huntington Beach Gables Homeowners Association and Board members'.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Ex Parte application for Temporary restraining order and order to show cause for preliminary inunction to enjoin disbursements from proceeds of sale of real property, or alternatively, for an order requiring gallian to deposit at least $52,145.27 with the court is denied without prejudice.

Ex-Parte application TO CONTINUE TRIAL is requested by Plaintiff.

Ex parte application is read and considered.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

---

DATE: 11/09/2018
DEPT:  C33

MINUTE ORDER

Page 1
Calendar No.

322

0012

CASE TITLE: The Huntington Beach Gables                CASE NO: **30-2017-00913985-CU-CO-CJC**
Homeowners Association vs. Bradley

EX PARTE APPLICATION TO CONTINUE TRIAL is denied.

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

**Thursday, February 17, 2022**                              **Hearing Room       5A**

10:30 AM
**8:21-11710   Jamie Lynn Gallian**                                      **Chapter 7**

#37.00   CON'TD Hearing RE: Motion for relief from automatic stay
[ACTION IN NON-BANKRUPTCY FORUM]

THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION

VS.

DEBTOR

FR: 1-20-22)

Docket      45

**Courtroom Deputy:**
- NONE LISTED -

**Tentative Ruling:**

**February 17, 2022**

Deny motion without prejudice to re-filing the motion if the cause of action for
voidable transfer is abandoned or deemed abandoned by the chapter 7
trustee pursuant to 11 U.S.C. 554.

Basis for Tentative Ruling

It is well established that a fraudulent transfer claim that existed prepetition
becomes property of the bankruptcy estate upon the filing of the bankruptcy
petition. 11 USC 541(a); *In re Vandevort*, 2009 WL 7809927 (9th Cir. BAP
2009). In *Vandervort*, the BAP held that the debtor's filing of the bankruptcy
petition did not cause the creditor to lose its standing. Rather, it cited with
approval the First Circuit's decision *Unisys Corp. v. Dataware Prods., Inc.*,
848 F.2d 311, 313–14 (1st Cir.1988), in which the Court there ruled that a
creditor who filed a prepetition fraudulent transfer action did not "lose"

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, February 17, 2022**                                              **Hearing Room**        **5A**

---

10:30 AM
**CONT...      Jamie Lynn Gallian**                                                        **Chapter 7**

standing; to the contrary, upon the abandonment of the fraudulent transfer
causes of action by the trustee, those causes of action "reposed" in the
creditor "free of any stay." *Id.* at 314. The creditor could therefore pursue its
prepetition fraudulent transfer litigation upon abandonment of the claim by the
trustee.

In *In re Zwirn*, 362 B.R. 536, 541–42 (Bankr.S.D.Fla.2007), a creditor brought
a prepetition fraudulent transfer against the debtor and other defendants. The
bankruptcy court held that the chapter 7 trustee had exclusive standing to
prosecute those claims during the pendency of the case and therefore could
settle those claims over the objection of the creditor, noting that the trustee
was free to file his own fraudulent transfer claim or to intervene in the state
court fraudulent transfer action. In *Sturgeon State Bank v. Perkey (In re
Perkey)*, 194 B.R. 846, 851 (Bankr.W.D.Mo.1996), the court held that the
trustee had the right to intervene in a fraudulent conveyance action
commenced by a creditor as long as the creditor waived a potential conflict of
interest problem.

A review of published California state cases reflect that bankruptcy trustees
have been substituted as the proper plaintiffs in state court fraudulent transfer
cases filed by the debtor's creditors. See *Chichester v. Mason*, 43 Cal.App.2d
577, 111 P.2d 362 (1941); *Wells v. Lloyd,* 35 Cal.App.2d 6, 94 P.2d 373
(1939).

Under Section 554, a claim may be abandoned by motion of the trustee, the
debtor, or other party in interest upon a showing that the claim is burdensome
to the estate or that it is of inconsequential value. The claim may also be
deemed abandoned by operation of law if the claim is scheduled by the
debtor and the case closes without prosecution of the claim by the trustee.

| Party Information |
|---|

**Debtor(s):**

    Jamie Lynn Gallian                                    Pro Se

---

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

**Thursday, February 17, 2022**                                    **Hearing Room      5A**

10:30 AM
**CONT...**      **Jamie Lynn Gallian**                                    **Chapter 7**

**Movant(s):**

The Huntington Beach Gables                Represented By
                                           Michael D Poole

**Trustee(s):**

Jeffrey I Golden (TR)                      Pro Se

0016

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, February 17, 2022**                                   **Hearing Room      5A**

---

10:30 AM
**8:21-11710   Jamie Lynn Gallian**                                          **Chapter 7**
Adv#: 8:21-01095      The Huntington Beach Gables Homeowners Association v. Gallian et al

   **#38.00**   CON'TD Hearing RE: Motion of Adversary Plaintiff and Creditor The Huntington
Beach Gables Homeowners Association's for Permissive Abstention from
Hearing State Law Claim and for Stay of Adversary Proceedings Pending
Litigation to Judgment in State Court

       FR: 1-20-22

               Docket      14

**Courtroom Deputy:**

   - NONE LISTED -

**Tentative Ruling:**

    **February 17, 2022**

    Deny motion without prejudice to re-filing the motion if the cause of action for
voidable transfer is abandoned or deemed abandoned by the chapter 7
trustee pursuant to 11 U.S.C. 554.

    <u>Basis for Tentative Ruling</u>

    As a preliminary matter, there is no voidable claim to "stay" in this adversary
proceeding in light of this court dismissing that claim for relief at the hearing
held on January 13, 2022. Abstention is also not appropriate since the
chapter 7 trustee currently has the exclusive right to prosecute the voidable
transfer claim.

    It is well established that a fraudulent transfer  claim that existed prepetition
becomes property of the bankruptcy estate upon the filing of the bankruptcy
petition. 11 USC 541(a); *In re Vandevort*, 2009 WL 7809927 (9th Cir. BAP
2009).  In *Vandervort*, the BAP held that the debtor's filing of the bankruptcy
petition did not cause the creditor to lose its standing.  Rather, it cited with

---

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
Judge Erithe Smith, Presiding
Courtroom 5A Calendar

---

**Thursday, February 17, 2022**                                    **Hearing Room    5A**

---

10:30 AM
**CONT...    Jamie Lynn Gallian**                                            **Chapter 7**

approval the First Circuit's decision *Unisys Corp. v. Dataware Prods., Inc.,*
848 F.2d 311, 313–14 (1st Cir.1988), in which the Court there ruled that a
creditor who filed a prepetition fraudulent transfer action did not "lose"
standing; to the contrary, upon the abandonment of the fraudulent transfer
causes of action by the trustee, those causes of action "reposed" in the
creditor "free of any stay." *Id.* at 314. The creditor could therefore pursue its
prepetition fraudulent transfer litigation upon abandonment of the claim by the
trustee.

In *In re Zwirn*, 362 B.R. 536, 541–42 (Bankr.S.D.Fla.2007), a creditor brought
a prepetition fraudulent transfer against the debtor and other defendants. The
bankruptcy court held that the chapter 7 trustee had exclusive standing to
prosecute those claims during the pendency of the case and therefore could
settle those claims over the objection of the creditor, noting that the trustee
was free to file his own fraudulent transfer claim or to intervene in the state
court fraudulent transfer action. In *Sturgeon State Bank v. Perkey (In re
Perkey)*, 194 B.R. 846, 851 (Bankr.W.D.Mo.1996), the court held that the
trustee had the right to intervene in a fraudulent conveyance action
commenced by a creditor as long as the creditor waived a potential conflict of
interest problem.

A review of published California state cases reflect that bankruptcy trustees
have been substituted as the proper plaintiffs in state court fraudulent transfer
cases filed by the debtor's creditors. See *Chichester v. Mason,* 43 Cal.App.2d
577, 111 P.2d 362 (1941); *Wells v. Lloyd,* 35 Cal.App.2d 6, 94 P.2d 373
(1939).

Under Section 554, a claim may be abandoned by motion of the trustee, the
debtor, or other party in interest upon a showing that the claim is burdensome
to the estate or that it is of inconsequential value. The claim may also be
deemed abandoned by operation of law if the claim is scheduled by the
debtor and the case closes without prosecution of the claim by the trustee.

---

| Party Information |
|---|

**Debtor(s):**

Jamie Lynn Gallian                              Pro Se

---

## United States Bankruptcy Court
### Central District of California
#### Santa Ana
### Judge Erithe Smith, Presiding
### Courtroom 5A Calendar

**Thursday, February 17, 2022**                                    **Hearing Room     5A**

10:30 AM
**CONT...**      **Jamie Lynn Gallian**                                              **Chapter 7**

   **Defendant(s):**

      Jamie L Gallian                          Pro Se

      Randall L Nickel                         Represented By
                                  Mark A Mellor

   **Movant(s):**

      The Huntington Beach Gables              Represented By
                                  Michael D Poole

   **Plaintiff(s):**

      The Huntington Beach Gables              Represented By
                                  Michael D Poole

   **Trustee(s):**

      Jeffrey I Golden (TR)                    Pro Se

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

**Thursday, February 17, 2022**                                   **Hearing Room**      **5A**

10:30 AM
**8:21-11710   Jamie Lynn Gallian**                                              **Chapter 7**
Adv#: 8:21-01095    The Huntington Beach Gables Homeowners Association v. Gallian et al

   **#39.00**    CONT'D STATUS CONFERENCE RE: Complaint of the Huntington Beach
             Gables Homeowners Association: 1. To Set Aside Voidable Transfer; 2. For
             Declaratory Relief Establishing Validity of Lien; 3. To Object to Discharge Under
             11 U.S.C. §523(a)(2) (Actual Fraud); and 4. To Object to Discharge Under 11
             U.S.C. §727(a)(5)

             FR: 1-6-22; 1-20-22

                              Docket       1


   **Courtroom Deputy:**
        - NONE LISTED -

   **Tentative Ruling:**


        **January 6, 2022**

        Continue the Status Conference to January 20, 2022 at 10:30 a.m., same
        date/time as hearing on the pending motion re abstention etc.  (XX)

        *Note:  Appearances at this hearing are not required.*
        ------------------------------------------------------------------

        **February 17, 2022**


        Deadline to conclude discovery:                     May 31, 2022
        Pretrial Conference:                                June 30, 2022 at 9:30
        a.m.
        Deadline to file Joint Pretrial Statement Stipulation:    June 16, 2022

        *Note:  Appearances at this hearing are not required if the parties accept
        the tentative ruling.  Plaintiff shall lodge a scheduling order consistent
        with the same.*

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, February 17, 2022**                                        **Hearing Room      5A**

10:30 AM
CONT...      **Jamie Lynn Gallian**                                                    **Chapter 7**

| Party Information |
|---|

**Debtor(s):**

Jamie Lynn Gallian                          Pro Se

**Defendant(s):**

Jamie L Gallian                             Pro Se

Randall L Nickel                            Pro Se

**Plaintiff(s):**

The Huntington Beach Gables                 Represented By
                                            Michael D Poole

**Trustee(s):**

Jeffrey I Golden (TR)                       Pro Se

---

0021

# EXHIBIT "2"



FILED & ENTERED

DEC 19 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re | Chapter 7 |
| JAMIE LYNN GALLIAN, | |
| | Case No. 8:21-bk-11710-SC |
| Debtor. | **MEMORANDUM OF DECISION REGARDING DEBTOR'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 5, 2022 ORDER SUSTAINING OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION** |
| | Date:    September 22, 2022<br>Time:    10:00 a.m.<br>Place:    Courtroom 5A – via zoom |

On July 26, 2022, Jamie Lynn Gallian ("Debtor") filed "Debtors [sic] Notice of and

Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho

Del Rey Mobile Home Estates [sic] Objection to Debtor's Claimed Homestead Exemption

and Joinder Parties Huntington Beach Gables HOA; Janine Jasso" [dkt # 157] (the

"Motion"). Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros")

filed a "Response to Debtor's Notice of and Motion for Reconsideration of 7.21.22 Order

Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estate's [sic] Objection

to Debtor's Claimed Homestead Exemption" [dkt # 170] (the "Response") on August 4, 2022. Jeffrey Golden, the Chapter 7 Trustee ("Trustee"), filed "Trustee's Joinder in Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estates' Response to Debtor's Notice of and Motion for Reconsideration of 7.21.22 Order Sustaining Houser Bros. Co. DBA Rancho Del Rey Mobile Home Estate's [sic] Objection to Debtor's Claimed Homestead Objection" [dkt 171] (the "Trustee's Joinder") on August 4, 2022. Also on August 4, 2022, the Huntington Beach Gables Homeowners Association (the "HOA") filed "The Huntington Beach Gables Homeowners Association's Joinder to Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates' Response to Debtor's Motion for Reconsideration" [dkt #173] (the "HOA Joinder"). Debtor filed a "Reply to Houser Bros Co DBA Rancho Del Rey MobileHome [sic] Estates [sic] Opposition to Debtors [sic[ Motion for Consideration [sic] of 7/21/22 Order Sustaining Houser Bros Co DBA Rancho Del Rey Mobilehome [sic] Estates [sic] Objection to Debtor's Claimed Homestead Exemption" [dkt #185] (the "Reply").  The Motion initially came on for hearing before the Honorable Erithe A. Smith on August 18, 2022 at 10:30 a.m. The hearing was subsequently continued to September 22, 2022 for further oral argument.  Appearances were made as noted on the Court's record. After the hearing, the matter was taken under advisement.[1]

<u>Procedural Background</u>

On May 12, 2022, Houser Bros filed a "Motion Objecting to Debtor's Claimed Homestead Exemption" ("Homestead Motion"). Dkt. 95.  Joinders to the Homestead Motion were filed by the HOA, creditor Janine Jasso ("Jasso"), and chapter 7 trustee

---

[1] This case was transferred to the Honorable Scott Clarkson on September 1, 2022 due to the retirement of the undersigned, Judge Erithe Smith, on October 29, 2022. However, as Judge Smith issued the underlying order sustaining Trustee's objection to Debtor's homestead exemption, presided over the hearing on Debtor's instant motion for reconsideration, and continues to serve as a recalled bankruptcy judge, she has authority and jurisdiction to rule on this motion for reconsideration.

0024

1   Jeffrey Golden ("Trustee")[2] (collectively, the "Joining Parties"). Dkts. 98, 100. The

2   Homestead Motion was set for hearing on June 2, 2022, at 10:30 a.m. Dkt. 99. Debtor

3   filed a late opposition to the Homestead Motion ("Homestead Opposition") on June 1,

4   2022, just one day prior to the hearing. Dkt. 105.

5
6       On June 2, 2022, the Court conducted a hearing on the Homestead Motion

7   and continued the hearing to July 21, 2022  in order to allow the Joining Parties to

8   respond to Debtor's late-filed Homestead Opposition.  On June 23, 2022, the Court

9   entered its "Order Continuing Hearing on Motion Objecting to Debtor's Claimed

10  Homestead Exemption" ("June 23, 2022 Order"), which attached a copy of the

11  Court's tentative ruling for the hearing on June 2, 2022. Dkt. 124. The June 23,

12  2022 Order provided that the hearing on the Homestead Motion was continued to

13  July 21, 2022, at 10:30 a.m. to allow Houser Bros and the Joining Parties to file

14  replies to Debtor's late opposition by July 7, 2022 and that no further pleadings

15  were to be filed regarding the Motion. Dkt. 124.

16
17      Timely reply briefs were filed by Houser Bros and the HOA. Dkts. 129, 130,

18  131, 132, 133. On July 8, 2022, Debtor filed an unauthorized "Reply to Greg

19  Buysman, CA Notary Public Commission Number 2341449; Owner & Operator the

20  UPS Store, Edinger/Springdale." Dkt. 134.

21
22      The Court held a continued hearing on the Homestead Motion on July 21,

23  2022, at which time it orally granted the same for the reasons stated in its posted

24  tentative ruling. That same day, on July 21, 2022, Debtor filed a "Notice of

25  Lodgment of Orange County Tax Assessors [sic] Proof of Debtors [sic] Homestead

26  Exemption Effective 2/25/2021 in Support of Opposition to Motion Objecting to

27  ───────────────────────
[2] Trustee's joinder was not filed until June 30, 2022. Dkt. 128.

28

3

Claimed Homestead Exemption" ("First NOL"). Dkt. 139. Later that same day, Debtor

also filed a "Notice of Lodgment of Orange County Tax Assessors [sic] Proof of Debtors

[sic] Homestead Exemption Effective 2/25/2021 in Support of Opposition to Motion

Objecting to Claimed Homestead Exemption" ("Second NOL"). Dkt. 140. Finally, on July

21, 2022,  Debtor filed a "Notice of Appeal and Statement of Election" ("Notice of

Appeal") regarding a "7/21/2022 Order Denying Debtors [sic] Declared Homestead and

Debtors [sic] Homeowners Exemption Effective February 25, 2021 with the Orange

County Tax Assessor Pursuant to California Department of Housing and Community

Development Certificate of Title Perfected February 25, 2021." Dkt. 143. Debtor's appeal

was referred to the Bankruptcy Appellate Panel based on Debtor's election. Dkt. 161.

However, the Court's "Order Granting Houser Bros. Co. dba Rancho Del Rey Mobile

Home Estates's Motion Objecting to Debtor's Claimed Homestead Exemption in 16222

Monterey Lane, Space 376, Huntington Beach, CA 92649" ("Homestead Order") was not

entered until August 5, 2022. Dkt. 177.

On July 26, 2022, Debtor filed the Motion. Dkt. 157.  Shortly thereafter, on August

1, 2022, Debtor filed a "Motion for Leave from the Bankruptcy Appeal [sic] Panel to

Permit the Bankruptcy Court to Consider Debtor's Motion for Re-Consideration [dkt. 157]

on August 18, 2022." Dkt. 167. The following day, on August 2, 2022, Houser Bros filed

an "Optional Appellee Statement of Election to Proceed in District Court." Dkt. 168. A

Notice of Transfer of Appeal to District Court was filed on the docket by the Debtor on

August 8, 2022. Dkt. 180. Debtor also filed a Notice Regarding Appeal From Bankruptcy

Court that was entered on August 11, 2022. Dkt. 184.  Ultimately, the District Court Case,

no. 8:22-cv-1462-RGK was dismissed by Debtor, thereby eliminating any issue regarding

this Court's jurisdiction over the Motion. *See* Dkt. 215.

4

0026

<u>Standards for Relief Under Federal Rules of Civil Procedure 59(e) and 60(b)</u>

Federal Rules of Civil Procedure (FRCP) 59(e) and 60(b) are applicable to bankruptcy cases pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 respectively.

A motion brought under FRCP 59 involves reconsideration on the merits and generally should not be granted unless it is based on at least one of the following grounds: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow the moving party the opportunity to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to reflect an intervening change in controlling law.  *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682, 683 (Bankr.C.D.Cal.2003), *citing McDowell v. Calderon,* 197 F.3d 1253, 1255 (9th Cir.1999), *cert. denied,* 529 U.S. 1082, 120 S.Ct. 1708, 146 L.Ed.2d 511 (2000) (cit. omitted).  The term "manifest error" is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Oak Park* at 783.  A "manifest injustice" is defined as "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds."  *Id.*

A motion brought under FRCP 59 "may seek a reconsideration of the correctness and merits of the trial court's underlying judgment." *In re Wylie*, 349 B.R. 204, 209 (9th Cir. BAP 2006).  A motion based on FRCP 59 may not be used "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000). Further, such a motion may not be used to present a new legal theory for the first time, to raise legal arguments which

0027

could have been raised in connection with the original motion, or "to rehash the same arguments presented the first time or simply express the opinion that the court was wrong." *In re JSJF Corp.,* 344 B.R. 94, 103 (9th Cir. BAP 2006), *aff'd and remanded*, 277 Fed.Appx. 718 (9th Cir. 2008).

Under FRCP 60(b), a party may seek relief from a final judgment or order on the following enumerated grounds: 1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Factual Background

This matter involves a dispute over Debtor's claimed homestead exemption in the manufactured home located at 16222 Monterey Lane, Unit 376, Huntington Beach, CA (the "Property"). The underlying facts are complex and are set forth in the pleadings filed in connection with the Homestead Motion and the instant Motion and are incorporated herein by reference. However, due to the narrow scope of this Memorandum, such facts will not be fully discussed except as relevant to the Court's findings and conclusions.

The pleadings filed in connection with the Homestead Motion focused primarily on whether Debtor had an ownership interest in the Property as of the petition date, i.e., July 9, 2021. It is undisputed that shortly after the acquisition of the Property in November 2018, its registered owner was J-Sandcastle LLC ("Sandcastle"), an entity wholly owned by Debtor. Thereafter, Ron Pierpont and J-Pad LLC were added as the Property's legal

owners.  According to Debtor, Sandcastle's interest in the Property was transferred to her

on February 21, 2021; according to Houser Bros the transfer did not occur and/or did not

become effective until *after* July 9, 2021.  In her opposition to the Homestead Motion,

Debtor argued, among other things, that she qualified for the automatic homestead

exemption permitted under California law because she had continuously resided on the

Property as her principal residence since 2018 to the present. Debtor's Opposition to

Homestead Motion at pp.15, 20. Dkt. 105. There was no evidence presented by the

Joining Parties that disputed Debtor's residency claim.

Oral argument at the hearing on the Homestead Motion also focused on the issue

of ownership as of the filing of the bankruptcy petition.  Indeed, the Court's ruling on the

Homestead Motion exclusively relied on matters relating to ownership, as reflected in the

following excerpts from the Homestead Order:

> In In re *Shaefers*[3], the Ninth Circuit BAP found that a Chapter 7
> debtor cannot claim homestead exemption in limited liability company
> (LLC) that he owned, which owned real property at which debtor resided;
> debtor did not identify any beneficial or equitable interest in the property,
> and LLC members such as debtor had no interest in the company's
> assets, rather, debtor's interest in LLC was a personal property interest
> outside the statutory definition of a homestead. 623 B.R. 777 (B.A.P. 9th
> Cir. 2020).

> Here, Debtor has failed to meet her burden that the Property is
> subject to exemption. First, the HCD records show that J-Sandcastle LLC,
> not Debtor, was the Property's owner of record on the Petition Date. As of
> June 7, 2021— about a month before the Petition Date—the Property's
> registered owner was J-Sandcastle LLC, and the legal owners were
> Pierpont and J-Pad LLC. Hays Decl., Ex. 17 at 142. The HCD webpage
> indicates that "documents and fees" must be submitted to the HCD to

---

[3] *In re Shaefers* was subsequently vacated by the Ninth Circuit on August 31, 2022 due to the dismissal of the bankruptcy case. *In re Schaefers* ("*Schaefers II*"), 2022 WL 3973920, at *1 (9th Cir. Aug. 31, 2022) (vacating decision). The BAP decision therefore has "no precedential authority whatsoever." *See O'Connor v. Donaldson*, 422 U.S. 563, 578 n. 2, 95 S.Ct. 2486, 2495 n. 2, 45 L.Ed.2d 396 (1975) . It's availability for citation for any purpose is, therefore, uncertain.  In any event, the Court notes that 1) in *Shaefers*, the debtor asserted an interest in the LLC itself and not in the real property owned by the LLC, and 2) as discussed *supra* herein, an equitable interest in real property may be shown by occupancy.

0029

1  transfer ownership of a manufactured home or manufactured home. The
2  June 7, 2021, Title Search did not note any pending applications for title or
   registration change that might have added Debtor as the registered or
3  legal owner of the Property before the Petition Date. And, Debtor paid no
   fees to the HCD between June 7, 2021, and the Petition Date that could
4  have effectuated a title change. See Hays Decl., Ex. 26.

5         Moreover, the July 2021 HCD Transaction had a transaction date of
6  July 14, 2021—five days after the Petition Date—and included a certificate
   of title showing J-Sandcastle LLC as the Property's registered owner and
7  Pierpont and J-Pad LLC as the Property's legal owners. Hays Decl., Ex.
   21 at 171. Included in this post-petition transaction was a document to add
8  Debtor as the Property's "New Registered Owner." Id. at 172. Also
9  attached was a County of Orange "Tax Clearance Certificate" issued and
   executed on the Petition Date, which gave the Property's "Current
10 Registered Owner" as J1Sandcastle LLC. Id. at 191. The August 2021
11 HCD Transaction did include a certificate of title showing Debtor as the
   Property's registered owner, but according to the certificate, title was
12 issued on August 3, 2021, nearly a month after the Petition Date. Hays
   Decl., Ex. 22 at 195.

13        Second, between February 1, 2021, and the Petition Date, all
14 payments that Debtor submitted to Houser Bros. listed J-Sandcastle LLC
   as the payor/were on behalf of J-Sandcastle LLC. Only after the Petition
15 Date did Debtor submit a payment on her own behalf. See Hays Decl. Ex.
16 23 at 203-222.

17        Third, Debtor provides no credible evidence that she acquired an
   interest from the LLC on February 25, 2021. In Debtor's Original
18 Schedules, filed on the Petition Date (July 9, 2021), Debtor provided,
19 under penalty of perjury, that "Registered Title with HCD Debtor's single
   member LLC, J1Sandcastle Co, LLC." Motion at 33 (Exhibit 2). In addition,
20 Debtor, in the Opposition, asserts J-Sandcastle LLC's executed a
21 notarized release of title document, claiming: "On the petition date July 9,
   2021, the registered title owner of the manufactured home located at
22 16222 Monterey Lane, Unit #376, Huntington Beach, CA 92649
   ('Property') was Jamie Lynn Gallian as of February 25, 2021, the date J-
23 Sandcastle Co LLC signed and dated to release the Certificate of Title to
   Jamie Lynn Gallian, notarized the same date." Opp'n., 29. However, Mr.
24 Buysman did not actually notarize these documents. Instead, Mr.
25 Buysman's notary book shows that on February 25, 2021, he notarized for
   Debtor an "Affidavit of Death" and a "Transfer Grant Deed." Buysman
26 Decl., ¶7-11. Mr. Buysman did not notarize the July 2021 HCD
   Submission either. Id. Debtor's improperly filed July 8 response, even if
27 considered by the court, would be insufficient to counter the statements
   and documentary evidence set forth in the Buysman Declaration.

28        --------------------------------

8

In conclusion, Debtor failed to carry her burden because, on the Petition Date, the Property's registered owner was J-Sandcastle LLC, and the legal owners were Pierpont and J-Pad, LLC. As a result, the Property was not part of the estate and not eligible for an exemption.

Neither the Court's ruling at the hearing or the Homestead Order includes a full or proper analysis of Debtor's claimed automatic homestead exemption under Cal. Civ Proc. Code § 704.720(a).  The Court believes such oversight was in error.

Relief Under Either FRCP 59(e) or FRCP 60(b) is Warranted Because Debtor has Demonstrated Entitlement to an Automatic Homestead Exemption Under Cal.Civ.Proc. Code §704.720(a)

Though the Motion does not specifically cite FRCP 59(e) or FRCP 60(b), the substance of the arguments therein is consistent with either Rule and Debtor clarifies in her Reply brief that she is seeking relief under both Rules. Debtor's Reply brief at 5. As previously noted, it is undisputed that Debtor has resided continuously on the Property as her principal residence from November 2018 to through the petition date and beyond. As a matter of law, Debtor meets the requirements for an automatic homestead exemption under Cal. Civ. Proc. Code §§ 704.710(c) and 704.720(a).

In *In re Gilman*, 887 F.3d 956, 964-965 (9th Cir. 2018), the Ninth Circuit held as follows:

California provides for an "automatic" homestead exemption. Cal. Civ. Proc. Code § 704.720(a). The automatic exemption protects a debtor "who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling." *In re Anderson*, 824 F.2d 754, 757 (9th Cir. 1987); *see also Diaz*, 547 B.R. at 334 ("The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption.").

Under Cal. Civ. Proc. Code § 704.710(c), a "homestead" is "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment

0031

1    creditor's lien attached to the dwelling, and (2) in which the judgment
2    debtor or the judgment debtor's spouse resided continuously thereafter
     until the date of the court determination that the dwelling is a homestead."
3    This "requires only that the judgment debtor *reside* in the property as his
     or her principal dwelling at the time the judgment creditor's lien attaches
4    and continuously thereafter until the court determines the dwelling is a
     homestead." *In re Elliott*, 523 B.R. 188, 196 (BAP 9th Cir.
5    2014) (quoting *Tarlesson*, 184 Cal. App. 4th at 937, 109 Cal.Rptr.3d 319).
     It does not require that the debtor continuously own the property. *Id.*
6

7         To determine whether a debtor resides in a property for homestead
     purposes, courts consider the debtor's physical occupancy of the property
8    and the intent to reside there. *Diaz*, 547 B.R. at 335; *Ellsworth v. Marshall*,
     196 Cal.App. 2d 471, 474, 16 Cal.Rptr. 588 (1961) ("The physical fact of
9    the occupancy and the intention with which the premises are occupied 'are
     both elements to be considered in determining the actual residence.' ")
10   (quoting *Lakas v. Archambault*, 38 Cal.App. 365, 372, 176 P. 180 (1918)).

11        California law rejects Phillips' argument that title to the property is
12   necessary to claim a homestead exemption. For instance, *Tarlesson* held
     that "judgment debtors who continuously reside in their dwellings retain a
13   sufficient equitable interest in the property to claim a homestead
     exemption even when they have conveyed title to another." 184 Cal.App.
14   4th at 937, 109 Cal.Rptr.3d 319. The court further noted that "[s]uch a
     result is consistent with the purpose of California's homestead exemption
15   to protect one's dwelling against creditors." *Id.* Likewise, *Elliott* held that
16   conveyance to a third party does not defeat a debtor's right to an
     automatic exemption, "because continuous residency, rather than
17   continuous ownership," controls the analysis. 523 B.R. at 196.

18   Importantly, *Gilman* cites with favor the case of *Tarlesson v. Broadway*
19
     *Foreclosure Investments, LLC*, 184 Cal.App.4th 931 (2010).  In analyzing the interplay
20
     between Cal. Civ. Proc. Code §§ 703.720 and 704.710(c), the Tarlesson Court explained:
21

22        Broadway bases its argument in substantial part on the language
     of section 703.020 which provides that statutory exemptions "apply only
23   to property of a natural person." Broadway reads section 703.020 to imply
     a requirement of ownership. But the authorities Broadway cites do not
24   support its argument. While section 703.020, subdivision (a) states
     generally that "[t]he exemptions provided by this chapter apply only to
25   property of a natural person," the statutory definition of "homestead"
     provided in section 704.710 requires only that the judgment debtor reside
26   in the property as his or her principal dwelling at the time the judgment
     creditor's lien attaches and continuously thereafter until the court
27   determines the dwelling is a homestead. (§ 704.710, subd. (c).) There is
     no requirement in section 704.710 that the judgment debtor continuously
28

1    own the property, and we do not read section 703.020 to impose
2    such a requirement. 184 Cal.App.4th at 937.

3    Further, the Court in *Tarlesson* recognized that "debtors who continuously

4    reside in their dwellings retain a sufficient equitable interest in the property to claim

5    a homestead exemption even when they have conveyed title to another." *Id.*

6    (citations omitted).  Accordingly, the Court finds and concludes that Debtor

7    satisfied her burden of establishing entitlement to an automatic homestead

8
9    exemption under California law and that the Court erred in not recognizing such

10   entitlement in its Homestead Order.

11   <u>Debtor's Homestead Exemption in the Amount of $600,000 Allowed by Cal.</u>

12   <u>Civ. Proc. Code § 704.730(a) is Not Limited by § 522(p)(1)</u>

13   In its Response to the Motion, Houser Bros requests that if the Court grants

14   the Motion to allow Debtor a homestead exemption, such exemption should be

15   limited to $170,350 pursuant to 11 U.S.C. § 522(p)(1) because, according to

16   Debtor, she acquired an ownership interest in the Property on February 21, 2022
17
18   (less than 180 days before the bankruptcy filing).  Section 522(p)(1) limits a

19   debtor's ability to take advantage of homestead exemptions under state law.

20   Specifically, § 522(p)(1) provides that a debtor "may not exempt any amount of

21   interest *that was acquired by the debtor* during the 1215-day period preceding the

22   date of the filing of the petition that exceeds . . . $170,350 in value in real or

23   personal property that the debtor . . . uses as a residence." (emphasis added)  A
24
25   majority of courts have held that § 522(p)(1) applies to "opt-out" states such as

26   California.  See, *In re Virissimo*, 332 B.R. 201, 207 (Bankr. D.Nev.2005); *Kane v.*

27   *Zions Bancorporation, N.A.*, 2022 WL 4591787 (September 29, 2022). This Court

28

11

agrees with the majority view regarding the application of § 522(p)(1) to exemptions allowed under California law.

The Ninth Circuit has held that "it appears that Congress intended 'acquire' to mean 'gaining possession or control' by purchasing or gaining an ownership interest, either legal or equitable." *In re Greene*, 583 F.3d 614, 623 (9th Cir.2009).  California law provides for an automatic homestead exemption, which protects a debtor "who resides . . . in the homestead property at the time of a forced judicial sale of the dwelling." *Gilman*, 887 F.3d at 964.  The filing of a bankruptcy petition has been held to constitute a forced sale that triggers the application of the automatic homestead exemption.  *In re Elliott,* 523 B.R. 188, 195 (9th Cir. BAP 2014).  As previously noted, in California, title to the property is not necessary to claim an automatic homestead exemption. *Gilman* at 965 ("To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there.")

Here, Debtor has sufficiently demonstrated both continuous occupancy of the Property as well as her intent to reside there. Consequently, she qualifies for the homestead exemption provided under Cal. Civ. Proc. Code § 704.720(a) without regard to, and irrespective of, her subsequent acquisition of legal title. Accordingly, the amount of her exemption permitted under Cal. Civ Proc. Code § 704.730(a) is not affected by the restriction imposed by § 522(p)(1).

<u>Conclusion</u>

Based upon the foregoing, the Court finds and concludes that 1) Debtor's continuous possession and occupation of the Property as her principal residence (irrespective of ownership) constitutes an equitable interest that is sufficient to establish her entitlement to the automatic homestead exemption provided by Cal. Civ. Proc. Code

0034

§§ 704.720(a) and 704.730(a), 2) the Motion should be granted under FRCP 59(e) on the basis of manifest error of law and under FRCP 60(b)(6); 3) the Court's Homestead Order entered on August 5, 2022 should be vacated and the underlying Homestead Motion related thereto should be deemed denied; and 4) Debtor is entitled to a homestead exemption in the amount of $600,000.

###

Date: December 19, 2022

Erithe Smith
United States Bankruptcy Judge

13

0035

FILED & ENTERED

MAY 15 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle          DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

In re

**JAMIE LYNN GALLIAN**

Debtor,

8:23-CV-00001-DSF
Case No. 8:21-bk-11710-SC

Chapter: 7

**ORDER REGARDING "ORDER REVERSING THE ORDER OF THE BANKRUPTCY COURT AND REMANDING FOR FURTHER PROCEEDINGS" ENTERED BY THE DISTRICT COURT ON NOVEMBER 1, 2023**

On December 29, 2022, Houser Bros. Co. dba Rancho Del Rey Mobile Estates ("Houser Bros.) appealed this Court's Order Granting Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining Objection to Debtor's Homestead Exemption entered on December 19, 2022 ("Reconsideration Order") in the above referenced bankruptcy case. Houser Bros. elected to have its appeal heard by the United States District Court ("District Court"). On November 1, 2023, the District Court entered its Order Reversing the Order of the Bankruptcy Court and Remanding for Further Proceedings ("Reversal Order").

0036

1    The Reversal Order directs this Court to issue findings concerning 1) the nature of

2 the Debtor Jamie Lynn Gallian's ("Debtor") interest in the 2014 Skyline Custom Villa

3 manufactured home located at 16222 Monterey Lane, Unit 376, Huntington Beach,

4 California (the "Property"), including whether Debtor ever acquired (and retained) an

5 equitable interest in the Property, and 2) whether title was transferred to her prior to the

6 date the bankruptcy petition was filed.   The within findings constitute the Court's

7 response to the remand directive of the Reversal Order.[1]

8    I.    Background

9    This matter involves a dispute over Debtor's claimed homestead exemption in the

10 Property.  On or about November 1, 2018, Debtor purchased the Property from

11 registered owner, Lisa Ryan ("Ryan") with proceeds Debtor received from the sale of her

12 previous home. Debtor's Motion for Reconsideration at 15.  [Dkt. 157].  However, on this

13 same date, Debtor caused Ryan to transfer the Certificate of Title regarding the Property

14 to her single-member limited liability company, J-Sandcastle Co LLC ("Sandcastle"),

15 which Certificate of Title was recorded by Debtor at the Department of Housing and

16 Community Development on November 16, 2018.  *Id.* at 26; Houser Bros.' Motion

17 Objecting to Debtor's Claimed Homestead Exemption, Exhs. 13 and 14 [Dkt 95].

18    A.  Houser Bros.'s Motion Objecting to Debtor's Claimed Homestead Exemption

19    On May 12, 2022, Houser Bros. filed its "Motion Objecting to Debtor's Claimed

20 Homestead Exemption" (Homestead Motion").  [Dkt.95].  Various other parties joined in

21 the Homestead Motion.  [Dkts. 98, 100].  The pleadings filed in support of the Homestead

22 Motion focused primarily on the argument that Debtor did not hold legal title to the

23

24 _____

[1] The underlying bankruptcy case was transferred to the Honorable Scott Clarkson on

25 September 1, 2022 due to the retirement of the undersigned, Judge Erithe Smith, on

26 October 29, 2022. However, as Judge Smith presided over the hearing on Debtor's

Motion for Reconsideration and issued the Reconsideration Order in her capacity as a

27 recalled bankruptcy judge (effective until October 31, 2024), she has authority and

28 jurisdiction to issue the within findings.

1  Property as of the date the bankruptcy petition was filed, i.e., July 9, 2021 (the "Petition

2  Date") and, therefore, she was not entitled to claim a homestead exemption.

3          Debtor opposed the Homestead Motion, asserting that Sandcastle had transferred

4  its interest in the Property to her on or about February 25, 2021, prior to the Petition Date.

5  Debtor also argued that she was entitled to an automatic homestead exemption under

6  Cal. Civ. Proc. Code §§ 704.710(c) and 704.720(a) as she had continuously resided on

7  the Property since November 2018 through the Petition Date and had intended the same

8  to be her principal residence during such time.

9          The final hearing on the Homestead Motion was held on July 21, 2022.  At that

10  hearing, oral argument focused on the issue of legal ownership as of the Petition Date.

11  On August 5, 2022, this Court entered its Order Granting Houser Bros. Co. dba Rancho

12  Del Rey Mobile Home Estate's Motion Objecting to Debtor's Claimed Exemption in 16222

13  Monterey Lane, Space 376, Huntington Beach, CA 92649" [Dkt. 177] ("Homestead

14  Order") on the ground that Debtor did not hold legal title to the Property as of the Petition

15  and, therefore, was not entitled to a homestead exemption under Cal Civ. Pro. Code

16  §704.30.  This Court ruled that

17                . . . Debtor failed to meet her burden that the Property is

18          subject to exemption.  First, the HC records show that J-Sandcastle LLC,

19          not Debtor, was the owner of record, on the Petition Date.  As of June 7, 2021 –

20          about a month before the Petition Date – the Property's registered owner

21          was J-Sandcastle LLC, and the legal owners were Ron Pierpoint and J-Pad LLC.

22          Hays Decl., Ex. 17 at 142.

23  Homestead Order, Exh. 1 at 10.

24          The Court did not, however, rule on Debtor's claim to an automatic homestead

25  exemption under Cal. Civ. Proc. Code §§ 704.710(c) and 704.720(a).

26          B.  Debtor's Motion for Reconsideration of the Homestead Order

27          On July 26, 2022, Debtor filed her "Motion for Reconsideration of 7.21.22 Order

28

1  [sic] Sustaining Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates Objection to

2  Debtor's Claimed Homestead Objection, etc." ("Reconsideration Motion") [Dkt.157]. [2]

3  Debtor reiterated her claimed status as legal owner, as well as entitlement to an

4  automatic homestead exemption. Opposition pleadings to the Reconsideration Motion

5  were filed by Houser Bros. and other interested parties.

6         On December 19, 2022, this Court entered its Reconsideration Order on the

7  ground that Debtor was entitled to an automatic homestead exemption.  [Dkt 274].  Also

8  on December 19, 2022, the Court entered its "Memorandum of Decision Regarding

9  Debtor's Motion for Reconsideration of the Court's August 5, 2022 Order Sustaining

10 Objection to Debtor's Homestead Exemption ("Memorandum of Decision"). [Dkt. 273].[3]

11     II.     Findings in Response to the District Court's Reversal Order

12         A. Did Debtor Have an Equitable Interest in the Property as of the Petition Date?

13         Yes.  This Court finds that, notwithstanding the fact that Sandcastle was the

14 registered owner and Ron Pierpont and J-Pad LLC were the legal owners of the Property,

15 Debtor held an equitable interest in the Property as of the date of the Petition that

16 satisfied the requirements for an automatic homestead exemption under Cal. Civ. Proc.

17 Code §§ 704.10(c) and 704.720(a).[4]

18         In *In re Gilman*, 887 F.3d 956-965 (9th Cir. 2018), the Ninth Circuit provides a clear

19 analysis of California's automatic homestead laws, to wit:

20         California provides for an 'automatic' homestead
        exemption. Cal. Civ. Proc. Code § 704.720(a). The automatic
21      homestead exemption protects a debtor 'who resides (or who is
        related to one who resides) in the homestead property at the time of
22      a forced judicial sale of the dwelling.' *In re Anderson*, 824 F.2d 754,

23 _____

[2] Debtor filed the Reconsideration Motion prior to the entry of the Homestead Order on August 5, 2022.

24

[3] The Memorandum of Decision was intended to serve as the Court's findings of fact and conclusions of

25 law in support of the Reconsideration Order and was incorporated by reference in the Reconsideration

26 Order.

[4] A "manufactured home together with the outbuildings and land upon which they are

27 situated" is eligible for a homestead exemption. Cal. Code Civ. Proc. § 704.710(a)(2)

28 (defining "dwelling").

4

757 (9th Cir. 1987); *see also Diaz*, 547 B.R. at 334 ("The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption.").

Under Cal. Civ. Proc. Code § 704.710(c), a 'homestead' is 'the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.' This "requires only that the judgment debtor *reside* in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead." *In re Elliott*, 523 B.R. 188, 196 (BAP 9th Cir. 2014) (quoting *Tarlesson*, 184 Cal. App. 4th at 937, 109 Cal.Rptr.3d 319). It does not require that the debtor continuously own the property. *Id.*

To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there. *Diaz*, 547 B.R. at 335; *Ellsworth v. Marshall*, 196 Cal.App. 2d 471, 474, 16 Cal.Rptr. 588 (1961) ('The physical fact of the occupancy and the intention with which the premises are occupied 'are both elements to be considered in determining the actual residence.') (quoting *Lakas v. Archambault*, 38 Cal.App. 365, 372, 176 P. 180 (1918)).

**California law rejects [the] argument that title to the property is necessary to claim a homestead exemption. For instance,** *Tarlesson* **held that 'judgment debtors who continuously reside in their dwellings retain a sufficient equitable interest in the property to claim a homestead exemption even when they have conveyed title to another'** 184 Cal.App. 4th at 937, 109 Cal.Rptr.3d 319. The court further noted that "[s]uch a result is consistent with the purpose of California's homestead exemption to protect one's dwelling against creditors." *Id.* Likewise, *Elliott* held that **conveyance to a third party does not defeat a debtor's right to an automatic exemption, 'because continuous residency, rather than continuous ownership,' controls the analysis**. 523 B.R. at 196.

(emphasis added)

According to the record, which is undisputed, Debtor used her own personal funds to purchase the Property.  More importantly, it is also undisputed that Debtor has continuously resided on the Property since November 2018 through and beyond the Petition Date.  Finally, there was no persuasive evidence presented by those in

1  opposition to the Reconsideration Motion to refute Debtor's position that she intended to

2  reside on the Property as her principal residence during the same period.  Accordingly,

3  this Court finds that by her continuous possession and use of the Property as her

4  principal residence since November 2018, Debtor held a sufficient equitable interest in

5  the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code

6  § 704.720(a). *Gilman*, 887 F.3d at 964; *Tarlesson,* 184 Cal. App. 4th at 937.

7      B.  Was Title Transferred to Debtor Prior to the Petition Date?

8      No. The Reconsideration Motion was granted solely on the basis of Debtor's

9  *equitable* interest in the Property.  The Reconsideration Order did not in any way alter,

10  change or modify the Court's finding in the Homestead Order regarding Debtor's lack of

11  *legal* title as of the Petition Date.  None of the evidence presented by Debtor in the

12  Reconsideration Motion persuaded the Court to reverse its finding in that regard.

13  Specifically, Debtor presented no credible evidence that the certificate of title showing

14  Sandcastle as the registered owner of the Property was transferred to her prior to the

15  Petition Date.  On the contrary, Houser Bros. presented documentation establishing that

16  a certificate of title showing Debtor as the new registered owner of the Property was not

17  issued until August 3, 2021, nearly a month after the Petition Date.  See Homestead

18  Motion, Hays Decl., Exh. 22 at 195.  Based on the record presented, the Court finds that

19  title to the Property was not transferred to Debtor prior to the Petition Date.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

6

III.    Conclusion

The Court finds that Debtor held a sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code § 704.720(a).

###

Date: May 15, 2024

*Erithe A. Smith*

Erithe Smith
United States Bankruptcy Judge

7

<pre>
1                   UNITED STATES BANKRUPTCY COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                            --oOo--

4  In Re:                      ) Case No. 8:21-bk-11710-ES
                               )
5  JAMIE LYNN GALLIAN,         ) Chapter 7
                               )
6          Debtor.             ) Santa Ana, California
   _____) Thursday, September 22, 2022
7                                10:00 a.m.

8                                CONT'D HEARING RE: DEBTOR'S
                                 MOTION FOR RECONSIDERATION OF
9                                7.21.22 ORDER SUSTAINING
                                 HOUSER BROS. CO. DBA RANCHO
10                               DEL REY MOBILE HOME ESTATES
                                 OBJECTION TO DEBTOR'S CLAIMED
11                               HOMESTEAD EXEMPTION AND
                                 JOINDER PARTIES HUNTINGTON
12                               BEACH GABLES HOA; JANINE JASSO

13                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE ERITHE SMITH
14               UNITED STATES BANKRUPTCY JUDGE

15 APPEARANCES:

16 For the Moving Party:        JAMIE LYNN GALLIAN, IN PRO PER
                                16222 Monterey Lane
17                              Unit 376
                                Huntington Beach, California
18                                92649
                                (714) 321-3449
19

20 For the Creditor:           D. EDWARD HAYS, ESQ.
                                Marshack Hays, LLP
21                              870 Roosevelt
                                Irvine, California 92620
22                              (949) 333-7777

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.
</pre>

*Briggs Reporting Company, Inc.*

ii

APPEARANCES:  (cont'd.)

For the Chapter 7                AARON E. DE LEEST, ESQ.
  Trustee:                       Danning, Gill, Israel &
                                   Krasnoff, LLP
                                 1901 Avenue of the Stars
                                 Suite 450
                                 Los Angeles, California 90067
                                 (310) 277-0077

For Huntington Beach            ROBERT P. GOE, ESQ.
  Gables Homeowners             Goe, Forsythe & Hodges, LLP
  Association:                  18101 Von Karman Avenue
                                Suite 1200
                                Irvine, California 92612
                                (949) 798-2460


Court Recorder:                 James Le
                                United States Bankruptcy Court
                                411 West Fourth Street
                                Suite 2030
                                Santa Ana, California 92701

Transcriber:                    Briggs Reporting Company, Inc.
                                9711 Cactus Street
                                Suite B
                                Lakeside, California 92040
                                (310) 410-4151

1

1    SANTA ANA, CALIFORNIA  THURSDAY, SEPTEMBER 22, 2022 10:00 AM

2                          --oOo--

3          (Call to order of the Court.)

4                THE CLERK:  Please come to order.  This United

5    States Bankruptcy Court is now in session.  The Honorable

6    Erithe Smith presiding.

7                THE COURT:  Thank you.  Good morning.

8                All right.  In the matter of Jamie Lynn Gallian on

9    calendar for this morning, may I have the appearance of the

10   moving party?

11               Ms. Gallian, are you on the line?  Ms. Gallian?

12               MS. GALLIAN (telephonic):  Yes, ma'am.  I couldn't

13   find the screen.  I apologize.  Thank you.  Good morning,

14   your Honor.  Jamie Gallian, the Debtor for the moving party.

15               THE COURT:  All right.  Thank you.

16               And for Creditor, Houser Brothers.

17               MR. HAYS (telephonic):  Good morning, your Honor.

18   For Houser Brothers, this is Ed Hays of Marshack Hays.

19               THE COURT:  Thank you.

20               And for the Chapter 7 Trustee.

21               MR. DE LEEST (telephonic):  Good morning, your

22   Honor.  Aaron De Leest, Danning, Gill, Israel and Krasnoff,

23   for the trustee.

24               THE COURT:  All right.

25               And for the Huntington Beach Gables Homeowners

2

1 Association.

2          MR. GOE (telephonic):  Yeah, Rob Goe for

3 Huntington Beach Gables Homeowners Association.

4          THE COURT:  All right.  Are there any other

5 appearances?

6          All right.  Just in case you haven't had a chance

7 to read the tentative ruling sealed, I did not post a

8 tentative ruling.  I decided to hear oral argument and take

9 the matter under submission, and thereafter issue my written

10 ruling.

11          So, as indicated in the tentative ruling, the

12 moving party, Ms. Gallian, will have 20 minutes to summarize

13 her arguments in support of the motion.  And you should

14 assume that I have read the pleadings, and the point of the

15 oral argument is to highlight key arguments that you want

16 the Court to consider.  And after that, the Creditor, Houser

17 Brothers will have up to 20 minutes to respond.  The joining

18 parties, the trustee and the HOA, will each have five

19 minutes to present any argument.  And the Debtor will have

20 up to 10 minutes to present final argument as the moving

21 party.  All right.  And -- hold on just a minute.  Okay.

22          All right.  Ms. Gallian, you may begin.  And you

23 will have until 10:28 to make your opening arguments.  Go

24 ahead.

25          MS. GALLIAN:  Okay.  So I filed this motion for

3

 1  reconsideration under 59(e).  And there are three basic

 2  reasons for a motion to be reconsidered.  The legal

 3  standards governing the motion for reconsideration is -- one

 4  of them is there is -- number three, there is an intervening

 5  change in the controlling law.  389 Orange Street Partners

 6  vs. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

 7          I would like to bring to the Court's attention a

 8  memorandum just published and filed on August 31st, 2022,

 9  stating that the decision in the Schaefers case has been

10  vacated.  And so that was one of the first big items that I

11  wanted to bring to the attention of the Court.

12          THE COURT:  And was the -- what is -- is the

13  citation in your pleadings?  I can't remember.

14          MS. GALLIAN:  I understood the Court to say that

15  there were no more -- you know, you couldn't file any more

16  pleadings.  This -- my -- doc 185 was filed on August 11,

17  2022, and the memorandum from the Ninth District was

18  published on August 31st.  So -- and I did not want to break

19  the order of the Court by filing, you know, something after

20  the Court had already said don't file anything.

21          THE COURT:  Okay.  Hold on just a minute.

22          MS. GALLIAN:  Yes, ma'am.

23      (Pause.)

24          THE COURT:  All right.  Go ahead.

25          MS. GALLIAN:  Okay.  So I can also -- the

*Briggs Reporting Company, Inc.*

4

1    memorandum --

2            THE COURT:  That's okay.  If you can tell me what

3    court it is, we can look it up.

4            MS. GALLIAN:  Of course, ma'am.  United States

5    Court of Appeals for the Ninth Circuit.

6            THE COURT:  Okay.

7            MS. GALLIAN:  Number 20-60055.

8            THE COURT:  All right.  Thank you.

9            MS. GALLIAN:  Uh-huh.  And did you want me to

10    consider -- to continue or just wait?

11            THE COURT:  No, go ahead.

12            MS. GALLIAN:  Okay.  So that was one of the

13    biggest things.  I don't think there's any dispute between

14    any of the parties that this is my home.  I've resided in

15    the home since November of 2018.  I purchased the home with

16    funds that -- I sold my previous property.  And I think I

17    made it clear, and -- the movant in the first objection

18    filed made it clear that I purchased the home from Lisa

19    Ryan.

20            The home was registered in my LLC two-and-a-half

21    weeks after I purchased it.  It was registered personally by

22    me on November 16, 2018.  That did not negate the fact that

23    the certificate of title was surrendered to me and signed by

24    a releasing signature of Lisa Ryan on November 1st.

25            THE COURT:  I'm sorry.  When you say "registered,"

5

1    do you mean that it was titled in the LLC?

2            MS. GALLIAN:  It was registered -- I purchased the

3    home, and it was registered to the LLC two-and-a-half weeks

4    later in the name of my sole member LLC, J-Sandcastle.

5            THE COURT:  All right.  Thank you.

6            MS. GALLIAN:  Yes.  Let's see.  I want to go back

7    here.  I think the State of California has long recognized

8    that a person may not hold legal title to real property in

9    order to claim a homestead exemption, but that an equitable

10   interest is sufficient.  This motion for reconsideration

11   tests the extent of this liberal policy, where the Chapter 7

12   debtor has resided continuously in the home in question for

13   years prior to and during her bankruptcy case and has an

14   interest in the property established by her purchase on

15   November 1st, using the proceeds from the sale of her

16   California residence, APN 937-630-53, unit 53 on October

17   31st, 2018, reinvesting those proceeds the very next day in

18   her personal residence, a 2014 Skyline custom villa

19   manufactured home.  And to bring to the Court's attention, I

20   bought that home sold in place, in -- on lot 376, in track

21   10542, unit four, under an existing, unexpired 80-year

22   ground leasehold, the same leasehold that my previous home

23   is also recorded under in the Orange County Clerk/Recorder's

24   Office, from 1979.

25           On November 1st, Lisa Ryan executed a notice of

6

1   sale and transfer documents and signed it November 1st,

2   2018.  And on the left side of that document -- and it's

3   Houser's Motion Exhibit 13.  It clearly states, "Jamie Lynn

4   Gallian is the purchaser."

5        On the 14th of November, after Lisa Ryan notified

6   and signed the notice of sale and transfer, because that's

7   the responsibility of the seller, Houser Brothers filed a

8   writ of possession in the old owner's name, in Lisa Ryan's

9   name.  And that date is November 14th, 2018.  I met with

10  Lisa Ryan on November 15th.  I wanted out of the deal.  I

11  didn't know what -- any -- what was going on with any of

12  these people.  I didn't know any of these people.

13       Anyway, Lisa Ryan signed and acknowledged that she

14  had given me a copy of her January 1st, 2006 -- and I

15  believe I attached it as an exhibit -- 2006 -- and what it's

16  called -- it's called mobile home rental agreement.  And I

17  thought it was very strange, because I was purchasing a 2014

18  mobile home rental -- mobile home from Lisa Ryan.  And Lisa

19  Ryan and I are about the same age, so subsequent -- and I'm

20  kind of getting off track here, your Honor, but --

21       THE COURT:  Remember you only have about 13

22  minutes.

23       MS. GALLIAN:  Yes, yes, yes, yes, yes.  Okay.  So

24  anyway, let's see.  I mentioned that the surrendered

25  certificate of title releasing signature did not change from

*Briggs Reporting Company, Inc.*

7

1   November 1st.  "Surrendered to Jamie Gallian."  Jamie

2   Gallian is still the owner and purchaser of the 2014 Skyline

3   manufactured home.  I think that the moving party's motion

4   for reconsideration opposition spends little time in

5   analyzing the types of equitable interest in real property

6   that support a homestead exemption.  And as the Court is

7   aware, in doc 74 that prior to filing a -- this bankruptcy,

8   I did file a declared homestead prior to my bankruptcy.

9       Let's see.  We know that the Ninth Circuit

10  historically describes Section 704.710 to 704.810, stating

11  that the automatic exemption protects a debtor from a forced

12  sale and requires that the debtor reside in a homestead

13  property at the time of the forced sale.  Diaz 547 B.R. at

14  334.  See also In re Anderson, 824 F.2d 754, 756 (9th Cir.

15  1987).  The statutory provisions affecting homesteads are

16  primarily located on article four and article five, which no

17  -- which -- an automatic homestead for which no recording is

18  necessary.  Courts, I think, in the past had found that most

19  people were ignorant of the fact that they needed to file a

20  declared homestead.  And so -- and I think that's why the

21  change in the law came about that a debtor does receive the

22  automatic homestead.

23       Let's see.  704.710(c) requires only that the

24  debtor reside in the property as his or her own dwelling at

25  the time of the judgment creditor's lien attaches and

8

1  continuously thereafter until the court determines the

2  dwelling is a homestead.  In re Gilman, 887 F.3d 956, 965

3  (2018) quoting Tarlesson, 184 -- it does not require that

4  the debtor continuously own the property.  California law

5  rejects the argument that title to property is necessary to

6  claim a homestead exemption.  Citing Tarlesson, in 184

7  Cal.App.4th at 937.  Third party does not defeat a debtor's

8  right to an automatic exemption, because continuous

9  residency, rather than continuous ownership, controls the

10 analysis.  Citing Elliot, 523 B.R. at 196.  California still

11 has its common law history of applying liberal standard to

12 automatic homestead laws.  In re Reaves.  Exemption statutes

13 are to be liberally construed, for their manifest purpose is

14 that of having -- saving a debtor and their families from --

15 by way of reason of misfortune or improvidence.

16      The record clearly shows that I reside in the home

17 during and after I filed my bankruptcy.  I don't believe

18 that Houser Brothers have satisfied their burden.  I believe

19 that they provided the Court with a document off of the

20 internet.  And I believe that the attorneys that did this

21 are not new.  They are trustees.  They know exactly where to

22 get a copy of a certified copy of -- from the Tax Assessors'

23 Office.

24      And I have provided a certified copy of my tax

25 assessors' application in my filing here that -- the tax

9

1   assessor gets that date from HCD, effective in Orange County

2   since February 25th, 2021.  They take that date from HCD.

3   It's not provided by the debtor.  If you look at my

4   application of my homeowners' exemption, I state on there

5   that I have owned the home since November 1st, and this is

6   my homeowners' exemption against the property.  It says,

7   "When did you acquire the property?"  I acquired it on

8   November 1st.  "Date you occupied the property?"  November

9   1st.  "Do you own any other property that was your principal

10  residence?"  I answered, "yes."  And I also gave the tax

11  assessor my old address.  Nowhere on that form does it state

12  the date February 25th, 2021.  Again, that 2/25, 2021 is

13  something that HCD provides to the tax assessor.  The doc 74

14  is my homestead exemption.

15          Let's see -- and I would -- let's see.  I do want

16  to address 522(p)(2)(B), just my last few minutes here, of

17  stating that -- get to that part -- that the -- let's see.

18  Where is it?

19          THE COURT:  I'm sorry.  Can you give me the

20  statutory citation again?

21          MS. GALLIAN:  11 U.S. Code 522(p)(2)(B).

22          THE COURT:  Thank you.

23          MS. GALLIAN:  "For purposes of paragraph

24          (1), any amount of such interest does

25          not include any interest transferred

*Briggs Reporting Company, Inc.*

10

1        from a debtor's previous principal

2        residence, which was acquired prior to

3        the beginning of such 1,215-day period,

4        into the debtor's current principal

5        residence, if the debtor's previous and

6        current residences are located in the

7        same state."

8 And I would ask the Court to consider that also (p)(2)(B)

9 does apply to this case.

10        Let's see.  What else.  I don't think I have

11 anything else, ma'am.

12        THE COURT:  All right.  Thank you very much.

13        Mr. Hays?

14        MR. HAYS:  Yes.  Thank you, your Honor.  There are

15 typically two types of interest in property.  There's legal

16 title to and a beneficial or equitable interest in.  Most of

17 the time the same person holds both interests, but sometimes

18 there is a difference.  For example, an elderly widow might

19 put legal title to her residence in the name of a child to

20 avoid probate while continuing to live in the home.  In such

21 an interest, the beneficial interest was always remaining

22 with the widow who was the occupant of the home.  It was her

23 home.  It would not be the child's home to sell.  The child

24 would have their name in the title.  The widow occupant

25 would still be the beneficial or equitable owner of the

*Briggs Reporting Company, Inc.*

11

1   home.  That is the type of argument that the Debtor is

2   making here, and that is the type of argument that the

3   California cases rely upon to say that the exemption is

4   dependent upon having a beneficial or equitable interest in

5   property.

6           But in this case, that's not what the record

7   before the Court establishes.  In this case, as the Debtor

8   mentioned in her comments, she sold her former residence and

9   purchased the subject property, but the subject property was

10  titled in the name of the LLC, because the Debtor had

11  pending litigation and creditor trouble.

12          The Debtor further engaged in the second layer of

13  fraud, which was to then put liens on the property in favor

14  of a second LLC.  And so, what we're looking at and what the

15  Court needs to consider is, is there any evidence in the

16  record that notwithstanding the legal title in the name of

17  one LLC and liens in favor of a second LLC, did the Debtor,

18  in fact, retain the equitable or beneficial interest in the

19  property?  And there is no doubt that that is not what

20  happened in this case.

21          As the evidence established and the Court noted at

22  the prior hearing, the Debtor was paying rent to the LLC

23  that was on title.  Nobody pays rent to themselves.  And so,

24  what the evidence establishes is that the Debtor transferred

25  not just the legal title but the beneficial and equitable

*Briggs Reporting Company, Inc.*

12

1  interest in the property while she was paying -- as

2  evidenced by the fact that she was paying rent to the LLC.

3  Moreover, it was the LLC on title that continued tendering

4  rent payments to Houser Brothers all the way through the

5  petition date, as noted by the Court in its tentative ruling

6  at the last hearing.

7          So the Court also noted in its tentative ruling at

8  the last hearing that the Debtor, and several of her ten

9  sets of amended schedules, admitted that the LLC was the

10  owner of the property.

11          So in viewing all of the evidence, the evidence is

12  that the Debtor never retained an equitable or beneficial

13  interest in the property.  And that was for the obvious fact

14  of she was in a pending lawsuit at the time that she was

15  acquiring the subject property, and she was attempting to

16  put the property and the equity and value of the property

17  outside the reach of her creditors.  She never wanted to

18  retain the legal or equitable -- the beneficial or equitable

19  interest in the property, because all of the evidence

20  suggests that it was part of her fraudulent scheme to

21  hinder, delay and defraud creditors.

22          Let's talk for a moment about the standards for

23  reconsideration.  Whether you consider the motion under Rule

24  59 or Rule 60, the motion fails.  The Debtor's primary

25  argument in seeking reconsideration is that there was a tax

13

1  exemption registered with Orange County.  And that is not

2  newly discovered evidence that could not have been

3  discovered and presented to the Court prior to the original

4  hearing, because according to that tax exemption, it was

5  registered as of February of 2021, and here we are in the

6  middle and latter part of 2022.  So this is not newly

7  discovered evidence.  The Debtor never raised a request for

8  a continuance because she couldn't get the evidence in front

9  of the Court before the Court originally ruled.

10      And even if the Court considers this alleged newly

11  discovered evidence, its only relevance to the proceeding is

12  that it controls the burden of proof in terms of who carries

13  the burden on the exemption.  If there was no registered tax

14  exemption, then the burden of proof is on the Debtor to

15  establish that she had a legal or an equitable interest in

16  the property.  And if she did have the registered tax

17  exemption, then the burden of proof would be on the party

18  challenging the exemption.  But either way that you look at

19  it, the evidence in the record is uncontroverted that the

20  Debtor neither had legal title to nor a beneficial or

21  equitable interest in this property.

22      If the Court were to consider such newly

23  discovered evidence that very well could have been presented

24  prior to the original hearing, then the Court would have to

25  consider every motion twice.  Once in the original instance,

14

1   and then when somebody thinks of another argument and goes

2   out and gets evidence that could have been presented when

3   that motion for reconsideration gets filed.  And that is not

4   the standard, and that is not the way to preserve a judicial

5   economy.

6          The Debtor mentioned the <u>Schaefers</u> ruling by the

7   Ninth Circuit, which was very recent.  And I'd like to

8   address that quickly.  The Ninth Circuit vacated the B.A.P

9   ruling.  And the B.A.P ruling was that the debtor in

10  <u>Schaefers</u> was not allowed an exemption because title to that

11  subject, single-family residence, was in the name of an LLC.

12  But the order vacating the B.A.P ruling was based on the

13  fact that the case had become moot.

14         And what happened in <u>Schaefers</u> was the Chapter 7

15  trustee abandoned the bankruptcy estate's interest in the

16  LLC.  The debtor was the 100-percent owner of the LLC.  And

17  so the court said that the entire matter in dispute over

18  whether the exemption was proper or not had become moot.

19  And that order recognizing the mootness of the appeal does

20  not undermine the precedential value of the B.A.P's ruling

21  in analyzing that a debtor cannot claim an exemption in

22  property owned by an LLC.

23         And the -- Bill Rochelle writing for the ABI in

24  one of his daily wires did a story about the -- an article

25  about this, recognizing that the precedential value of the

*Briggs Reporting Company, Inc.*

15

1  B.A.P's ruling likely is still out there and can and should

2  be relied upon.

3            The U.S. Supreme Court in <u>Owens</u>, which was a case

4  we cited, recognizes that you can only exempt from property

5  in the estate that which is property in the estate.  And in

6  this case, both the legal title to and the beneficial

7  interest in the property was not owned by the Debtor and was

8  owned by the LLC.  And I think the most smoking gun reason

9  is that the Debtor was paying rent to the LLC.  And that's

10 not something that somebody would do if they were, in fact,

11 the equitable owner of the property.

12           And then, finally, as recognized by the Court in

13 the original ruling on this matter, if the Debtor did, in

14 fact, acquire some interest in the property prior to the

15 bankruptcy, then the Section 522(p) cap would apply and

16 would cap the amount of the exemption.

17           And unless the Court has any further questions of

18 me, I would submit on that argument.

19           THE COURT:  All right.  Thank you.

20           And with respect to the joining parties, do either

21 of you wish to present any arguments, starting with Mr. Goe?

22           MR. GOE:  Yeah.  Just briefly, your Honor.

23           I agree with everything that Mr. Hays has stated.

24 And nothing has changed since your original ruling.  The

25 fact is that the Debtor specifically put this property into

*Briggs Reporting Company, Inc.*

16

1    an LLC to avoid the multiple judgments that my client had

2    obtained against her and furthered that pattern of fraud by

3    then putting insider liens on the LLC property as well.

4          Finally, Judge, it's worth noting that under

5    California Corporations Code, Section 17300, a member, which

6    Ms. Gallian is, has no interest in specific limited

7    liability company property.  So she has no ability to claim

8    a homestead exemption.  I have nothing further.

9          THE COURT:  All right.

10         Mr. De Leest.

11         MR. DE LEEST:  Yes, your Honor.  Thank you.  I

12   think I agree with Mr. Hays and Mr. Goe.  I actually have

13   nothing further to add.  They covered all my points.

14         THE COURT:  All right.  Very well.

15         And, Ms. Gallian, you get the last word on this.

16   You may respond if you like.

17         MS. GALLIAN:  Yes.  So in regards to Mr. Goe's

18   comments regarding multiple judgments, when I bought this

19   home on November 1st, 2018, after selling the property at

20   the Gables on October 31st, I sold the home unencumbered.  I

21   provided the Court with a -- two copies of a preliminary

22   title report.  Mr. Goe's multiple judgments that he refers

23   to didn't occur until May of 2019.  It's not like I had a

24   crystal ball.  There were no judgments.  I sold the home

25   unencumbered.

17

1      It's my business whether I purchased a home after

2  I had already committed to a three-year lease.  When I moved

3  out of the Gables on September 11th, I still had the

4  three-year lease.  The purpose of the LLC was to -- in case

5  I had to put a renter in there, in case I needed to stay at

6  the three-year lease home on Kenyon Drive.

7      Let's see.  Some of the other notes that I had

8  were, Mr. -- it's addressing Mr. Hays' comments.  The

9  pending lawsuit.  He says pending lawsuit.  The pending

10  lawsuit he filed -- or not he filed, but the Houser Brothers

11  filed on January 2nd, 2019, was against Jamie Gallian.  If

12  they truly believed that the home was owned by J-Sandcastle,

13  well then why haven't they named J-Sandcastle in their

14  unlawful detainer case, or even added them as a party, or

15  even added them in their adversary.

16      I was able to get out of the three-year lease.  I

17  have lived in the property.  It is my property.  On January

18  14th, 2019, I recorded a UCC filing with California State

19  giving public notice that the home is encumbered with a

20  security agreement and a promissory note dated November

21  16th, 2018.  I think that the gentlemen on the phone are

22  forgetting that it is a perfected lien.  The perfected lien

23  is held by J-Pad.  I am a third owner of J-Pad with two

24  other members.  With transferring the property back in

25  February 2021 was after a mandatory settlement conference

18

1   with Houser Brothers, because Houser Brothers did not want

2   to enter into a lease agreement with J-Sandcastle.

3          J-Sandcastle is the entity that filled out the

4   residency application on November 19th, 2018.  However, the

5   application was denied -- was sent to Jamie Gallian.  It was

6   never even considered J-Sandcastle was the applicant.

7   Everything that has been filed by Houser has been in the

8   name of Jamie Gallian.  Nothing is ever in the name of

9   J-Sandcastle.  And it wasn't until February 25th, 2021, that

10  Jamie Gallian, as the member of J-Sandcastle, released the

11  title to Jamie Gallian so that she could end this almost

12  four-year pending unlawful detainer case that Houser

13  Brothers still keep saying that possession is still in

14  question.

15         Possession is not in question.  Possession has

16  never been in question because Lisa Ryan sold the property,

17  gave notice that she sold the property to a bona fide

18  purchaser.  Houser Brothers has never been in possession of

19  the home.  The home was lawfully sold, as anticipated, by a

20  10/18, 2018 stipulation signed by Ms. Ryan and Houser

21  Brothers in an unrelated case.  Jamie Gallian intervened in

22  that case.  And when Houser Brothers executed a writ of

23  possession in the name of Jamie Gallian, removed Jamie

24  Gallian unlawfully from the home she owns, changed the

25  locks, intervened in the <u>Houser v. Ryan</u> case, and the Court

*Briggs Reporting Company, Inc.*

19

1   ordered Houser to return possession to Jamie Gallian.

2           So there is nothing more that I can add, except

3   for there is a perfected lien holder on the certificate of

4   title.  There is a security agreement and a promissory note

5   on -- filed with the UCC secretary of state.  It is still

6   valid.  And Jamie Gallian did not have a crystal ball to

7   realize that the creditor, Houser -- not Houser but

8   Huntington Beach Gables was going to end up with a massive

9   attorney fee judgment.  That was almost eight months after

10  Jamie Gallian purchased this home.

11          So Jamie Gallian hasn't defrauded anybody.  Jamie

12  Gallian has been more than open in her petitions.  And

13  filing an amended petition before the 341 meeting has

14  concluded, I understand under Rule 1009 is allowed.  And

15  with that, I'll end.

16          THE COURT:  All right.  Thank you.

17          The matter will stand submitted, and the Court

18  will issue a written ruling after reviewing its notes from

19  today's hearing, as well as all of the pleadings and

20  exhibits that have been filed.  All right.

21          MS. GALLIAN:  Thank you, your Honor.

22          MR. HAYS:  Thank you, your Honor.

23          THE COURT:  I believe --

24          MR. GOE:  Thank you, your Honor.

25          THE COURT:  Thank you.

20

1        (Proceedings concluded.)

2

3        I certify that the foregoing is a correct

4  transcript from the electronic sound recording of the

5  proceedings in the above-entitled matter.

6

7  /s/ Holly Steinhauer_____    1-24-23_____
   Transcriber                    Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Central District of California
# Claims Register

## 8:21-bk-11710-SC Jamie Lynn Gallian

**Judge:** Scott C Clarkson                 **Chapter:** 7

**Office:** Santa Ana                 **Last Date to file claims:** 10/25/2022

**Trustee:** Jeffrey I Golden (TR)                 **Last Date to file (Govt):** 01/05/2022

| | | |
|---|---|---|
| *Creditor:*  (41226475)<br>The Huntington Beach Gables Homeowners<br>Association<br>c/o Goe Forsythe & Hodges LLP<br>18101 Von Karman Ave, Suite 1200<br>Irvine, CA 92612 | **Claim No: 1**<br>*Original Filed Date:* 07/05/2022<br>*Original Entered Date:* 07/05/2022<br>*Last Amendment Filed*: 10/25/2022<br>*Last Amendment Entered*: 10/25/2022 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Robert P Goe<br>*Modified:* |

Amount  claimed: $553774.84

Secured claimed: $553774.84

*History:*

| | | |
|---|---|---|
| Details | 1-1 | 07/05/2022 Claim #1 filed by The Huntington Beach Gables Homeowners Association, Amount claimed: (Goe, Robert) |
| Details | 1-2 | 10/25/2022 Amended Claim #1 filed by The Huntington Beach Gables Homeowners Association, Amount claimed: $553774.84 (Goe, Robert) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*  (40861539)<br>Internal Revenue Service<br>PO Box 7346<br>Philadelphia, 19101-7346 | **Claim No: 2**<br>*Original Filed Date*: 08/11/2022<br>*Original Entered Date*: 08/11/2022<br>*Last Amendment Filed*: 12/16/2022<br>*Last Amendment Entered*: 12/16/2022 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Timothy C Schakow<br>*Modified:* |

Amount  claimed: $0.00

Secured claimed: $0.00

Priority  claimed: $0.00

*History:*

| | | |
|---|---|---|
| Details | 2-1 | 08/11/2022 Claim #2 filed by Internal Revenue Service, Amount claimed: $3416.58 (Schakow, Timothy) |
| Details | 2-2 | 12/16/2022 Amended Claim #2 filed by Internal Revenue Service, Amount claimed: $0.00 (Schakow, Timothy) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*  (40861536)<br>Houser Bros. Co.<br>DBA Rancho De1 Rey Estates | **Claim No: 3**<br>*Original Filed Date*: 10/25/2022 | *Status:*<br>*Filed by:* CR |

*History:*

| | | |
|---|---|---|
| Details | 3-1 | 10/25/2022 Claim #3 filed by Houser Bros. Co., Amount claimed: $280927.63 (Hays, D) |

*Description:*

*Remarks:*

0065

16222 Monterey Ln
Huntington Beachr CA 92649

*Original Entered
Date*: 10/25/2022

*Entered by:* D Edward Hays
*Modified:*

Amount claimed: $280927.63

*History:*

Details    🌐    3-1    10/25/2022 Claim #3 filed by Houser Bros. Co., Amount claimed: $280927.63 (Hays, D)

*Description:*

*Remarks:*

---

*Creditor:*    (41322710)
Janine Jasso, Jennifer Paulin, Lori Burrett et al.
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614

**Claim No: 4**
*Original Filed
Date*: 10/25/2022
*Original Entered
Date*: 10/25/2022

*Status:*
*Filed by:* CR
*Entered by:* Robert P Goe
*Modified:*

Amount  claimed: $69049.66

Secured claimed: $69049.66

*History:*

Details    🌐    4-1    10/25/2022 Claim #4 filed by Janine Jasso, Jennifer Paulin, Lori Burrett et al., Amount claimed:
$69049.66 (Goe, Robert)

*Description:*

*Remarks:*

# Claims Register Summary

**Case Name:** Jamie Lynn Gallian
**Case Number:** 8:21-bk-11710-SC
**Chapter:** 7
**Date Filed:** 07/09/2021
**Total Number Of Claims:** 4

| | |
|---|---|
| **Total Amount Claimed*** | $903752.13 |
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $622824.50 | |
| **Priority** | $0.00 | |
| **Administrative** | | |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/05/2023 16:10:50 | | |
| **PACER Login:** | aeddgdk37 | **Client Code:** Gallian - 27064 |

0066

| Description: | Claims Register | Search Criteria: | 8:21-bk-11710-SC Filed or Entered From: 6/15/2000 Filed or Entered To: 1/2/2024 |
|---|---|---|---|
| Billable Pages: | 1 | Cost: | 0.10 |

1 | ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@DanningGill.com*
2 | AARON E. DE LEEST (State Bar No. 216832)
    *adeleest@DanningGill.com*
3 | DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
4 | Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
5 | Facsimile: (310) 277-5735

6 | Attorneys for Plaintiff Jeffrey I. Golden,
    Chapter 7 Trustee
7 |

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

   **CENTRAL DISTRICT OF CALIFORNIA**
10 |
    **SANTA ANA DIVISION**
11 |

| In re | Case No. 8:21-bk-11710-SC |
|---|---|
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | Adv. No. |
| JEFFREY I. GOLDEN, Chapter 7 Trustee, | CHAPTER 7 TRUSTEE'S COMPLAINT: (1) TO AVOID AND RECOVER FRAUDULENT TRANSFERS; (2) TO AVOID AND RECOVER POSTPETITION TRANSFERS; (3) FOR DECLARATORY RELIEF; (4) FOR BREACH OF CONTRACT; (5) FOR MONEY HAD AND RECEIVED; AND (6) UNJUST ENRICHMENT |
| Plaintiff, | |
| vs. | |
| J-SANDCASTLE CO., LLC; J-PAD LLC; STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN BARCLAY; RONALD J. PIERPONT; ROBERT J. MCLELLAND; AND E. J. GALLIAN, | |
| Defendants. | Date:    [SEE SUMMONS] Time:    [SEE SUMMONS] Place:    [SEE SUMMONS] |

Plaintiff alleges:

## JURISDICTION

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), (K), and (O).  This adversary proceeding is brought pursuant to 11 U.S.C. §§ 542, 544, 548, 549, 550 and 551 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.  This

1719769.2  27064

1

1   adversary proceeding arises in and under and relates to the bankruptcy case under Chapter 7 of the

2   Bankruptcy Code (the "Code") entitled *In Jamie Lynn Gallian,* Case No. 8:21-bk-11710-SC (the

3   "Bankruptcy Case"), which is presently pending before the United States Bankruptcy Court for the

4   Central District of California, Santa Ana Division.  Plaintiff consents to and the Court can and

5   should enter a final judgment herein.  If and to the extent that the Court determines that it lacks

6   jurisdiction or authority to enter a final judgment, Plaintiff requests that the Court submit findings

7   of fact and conclusions of law for consideration by the District Court.

8

9                                        **PARTIES**

10          2.        Plaintiff in this adversary proceeding is Jeffrey I. Golden, the Chapter 7 trustee

11   ("Plaintiff" or the "Trustee") of the bankruptcy estate of Jamie Lynn Gallian, the debtor in the

12   Bankruptcy Case (the "Debtor").  Plaintiff brings this adversary proceeding solely in his capacity

13   as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

14          3.        Plaintiff is informed and believes, and based thereon alleges, that J-Sandcastle Co.,

15   LLC ("J-Sandcastle") was a California limited liability company, with its principal place of

16   business located in in the County of Orange, State of California.  The Debtor is the sole member

17   and manager of J-Sandcastle.

18          4.        Plaintiff is informed and believes, and based thereon alleges, that J-Pad LLC ("J-

19   Pad") was a California limited liability company, with its principal place of business located in in

20   the County of Orange, State of California.  The Debtor is the sole member and manager of J-Pad.

21          5.        Plaintiff is informed and believes, and based thereon alleges, that Steven D. Gallian

22   is an individual residing in the County of Orange, State of California.  Plaintiff is further informed

23   and believes that Steven D. Gallian is the Debtor's son.

24          6.        Plaintiff is informed and believes, and based thereon alleges, that Brian J. Gallian is

25   an individual residing in the County of Orange, State of California.  Plaintiff is further informed

26   and believes that Brian J. Gallian is the Debtor's son.

27

28

1719769.2  27064                                      2

7.      Plaintiff is informed and believes, and based thereon alleges, that E. J. Gallian is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that E. J. Gallian is the Debtor's granddaughter.

8.      Plaintiff is informed and believes, and based thereon alleges, that Justin Barclay is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that Justin Barclay is the Debtor's son.

9.      Plaintiff is informed and believes, and based thereon alleges, that Ronald J. Pierpont is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that Ronald J. Pierpont is the Debtor's ex-husband.

10.      Plaintiff is informed and believes, and based thereon alleges, that Robert J. McLelland is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that Robert J. McLelland is the Debtor's roommate.

11.      Plaintiff is further informed and believes, and based thereon alleges, that J-Sandcastle, J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, and Ronald Pierpont are all "insiders" of the Debtor pursuant to § 101(31) of the Code.

## **GENERAL ALLEGATIONS**

12.      On or about July 9, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Code.

13.      Jeffrey I. Golden thereafter accepted appointment as the Chapter 7 trustee for the Debtor's bankruptcy estate and continues to serve in that capacity for the benefit of creditors.

The J-Sandcastle Transfer

14.      Up to and until about October 31, 2018, the Debtor lived at 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649 ("Alderport Property"), which she received as a gift in 2017 from her stepmother, Sandra Bradley ("Ms. Bradley").  The Debtor always held title to the Alderport Property in her own name.

15.      On or about October 31, 2018, the Debtor sold the Alderport Property to Randall Nickell for $379,000, which he paid for in two cashier's checks payable to the Debtor, individually.

1719769.2 27064

3

16.     The Debtor deposited the funds from Mr. Nickell for the Alderport Property into a Chase Bank account in her name.

17.     Thereafter, the Debtor used $185,000 of the proceeds from the sale of the Alderport Property to purchase a manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 (the "Property") from Lisa Ryan.

18.     The Debtor paid Ms. Ryan the first $10,000 on November 1, 2018, and the $175,000 balance of the purchase price for the Property on November 17, 2018.

19.     Even though the Debtor paid for the Property with proceeds of her Alderport Property deposited into a bank account in her own name, the Debtor transferred title to, and the beneficial interest in, the Property to J-Sandcastle.

20.     At the time Debtor transferred the Property to J-Sandcastle, she was being sued in multiple actions and judgments were later entered against her as follows:

        a.      On November 8, 2018, in Case No. 30-2017-00913985, the Orange County Superior Court ("OCSC") granted a motion by the Huntington Beach Gables Homeowners Association ("HOA") for attorney's fees against the Debtor, and on December 4, 2018, the OCSC entered an order on the motion, which reflected that the HOA had been awarded $46,138 of attorney's fees against the Debtor, plus interest.

        b.      On May 6, 2019, in Case No. 30-2017-00913985, the HOA obtained judgment against the Debtor in excess of $315,000.

        c.      On September 27, 2018, in Case No. 30-2017-00962999, the OCSC imposed $3,070 of sanctions against the Debtor.

        d.      On March 21, 2019, in Case No. 30-2017-00962999, the HOA obtained a money judgment against the Debtor for $9,265.

        e.      To date, the Debtor has paid approximately $1,295 on account of all these judgments and orders.

21.     On November 1, 2018, Ms. Ryan executed a "Notice of Sale or Transfer" for the Property with the Debtor, "Jamie Lynn Gallian," identified as the "Purchaser/New Owner."

22.     On November 15, 2018, however, Ms. Ryan whited-out the Debtor's name and

1  replaced it with "J-Sandcastle Co, LLC Its Manager Jamie L. Gallian," pursuant to a discussion the

2  Debtor and Ms. Ryan had on that day (the "First J-Sandcastle Transfer").

3      23.    The fully executed "Notice of Sale or Transfer" of the Property reflecting that J-

4  Sandcastle was the owner of the Property was transmitted to the California Department of Housing

5  and Community Development (the "HCD"), which handles the registering and titling of

6  manufactured and mobilehomes, on or about November 20, 2018 (the "Second J-Sandcastle

7  Transfer").  The First J-Sandcastle Transfer and Second J-Sandcastle Transfer are, collectively, the

8  "J-Sandcastle Transfers".

9      24.    J-Sandcastle paid no consideration to the Debtor for the J-Sandcastle Transfers or in

10  connection with receiving title to and the beneficial interest in the Property. J-Sandcastle did not

11  have any business other than its ownership of the Property.

12      25.    On the Petition Date, title to the Property remained with J-Sandcastle, and not the

13  Debtor.

14      26.    On or about July 28, 2021 (postpetition), however, the Debtor caused J-Sandcastle

15  to transfer title to herself personally.  Accordingly, as of August 10, 2021, the HCD records were

16  changed to reflect that the Property's registered owner was "Jamie Lynn Gallian".  By receiving

17  this transfer from J-Sandcastle, the Debtor is a subsequent transferee that did not take for value, in

18  good faith, and without knowledge of the voidability of the initial fraudulent transfer to J-

19  Sandcastle.

20      The J-Pad Transfers

21      27.    At about the time that the Debtor purchased the Property, she sought to conceal the

22  equity in the Property by granting a lien for $225,000 on the Property in favor of J-Pad.

23      28.    Accordingly, on November 16, 2018, the Debtor, as the sole member of J-

24  Sandcastle the "borrower", executed a secured promissory note in the amount of $225,000 in favor

25  of J-Pad.  The secured promissory note is secured by a separate security agreement dated

26  November 16, 2018, reflecting a security interest in the Property between J-Sandcastle and J-Pad

27  (the "First J-Pad Transfer").

28      29.    In addition, on November 16, 2018, the Debtor, individually as the "borrower", also

executed a secured promissory note in the amount of $225,000 in favor of J-Pad. The secured promissory note with the Debtor also purports to be secured by a separate security agreement dated November 16, 2018, between the Debtor and J-Pad (the "Second J-Pad Transfer"). It is unknown if the separate security agreement exists.

30.    Notwithstanding that the secured promissory notes were for $225,000, J-Sandcastle did not advance or loan any money to J-Pad at any point in time. The Debtor, however, advanced $175,000 to J-Pad at about the time of the First J-Pad Transfer, with the balance of $50,000 coming from the Debtor later (collectively, the "Third J-Pad Transfer").

31.    Despite the two secured promissory notes, the $225,000 was not owed to J-Pad. Rather, the $225,000 was owed by J-Pad to the Debtor (who had in fact advanced the funds from her personal accounts).

32.    On January 14, 2019, the Debtor individually and through J-Pad filed not less than three UCC-1 Financing Statements with the California Secretary of State listing J-Pad as the secured party and the collateral as the Property (collectively, the "Fourth J-Pad Transfer"). A UCC filing failed to perfect liens against the Property.

33.    Thereafter, on August 20, 2020, the Debtor signed a "Statement to Encumber" that was submitted to the HCD to add the Debtor's ex-husband, Ronald J. Pierpont, and J-Pad as lienholders on the certificate of title for the Property (the "Fifth J-Pad Transfer").

34.    Thereafter, as of February 24, 2021, the certificate of title to the Property reflected that Mr. Pierpont and J-Pad were the "legal owners" (i.e., the lienholders) on the Property.

35.    On or about July 9, 2021, however, Mr. Pierpont submitted a signed "Lien Satisfied" form to the HCD removing Mr. Pierpont and J-Pad as the lienholders on the Property.

36.    Thereafter, as of August 3, 2021, the certificate of title to the Property did not reflect any "legal owners" (i.e., lienholders) on the Property.

37.    On or about August 6, 2021 (postpetition), the Debtor, individually, signed and submitted a "Statement of Facts" to the HCD stating that the legal owner of the Property was J-Pad and that J-Pad perfected its lien on January 14, 2019 (the "Sixth J-Pad Transfer").

38.    The Debtor also submitted with the August 6, 2021, Statement of Facts a "Statement

0073

1  to Encumber" purportedly signed on January 14, 2019, reflecting that the "legal owner" of the

2  Property was only J-Pad (the "Seventh J-Pad Transfer").

3       39.    The First, Second, Third, Fourth, Fifth, Sixth, and Seventh J-Pad Transfers are

4  collectively referred to as the "J-Pad Transfers".

5       40.    J-Pad paid no consideration for the J-Pad Transfers.

6       <u>The Steven and Brian Gallian Transfers</u>

7       41.    On August 20, 2020, the Debtor, as the member of J-Sandcastle, signed a

8  "Statement to Encumber" that was submitted to the HCD to add her sons Steven Gallian and Brian

9  Gallian as legal owners (i.e., lienholders) on the certificate of title for the Property (the "First

10  Steven and Brian Transfer").

11       42.    In addition, on December 4, 2020, the Debtor, as the member of J-Pad, filed a UCC

12  Financing Statement Amendment (UCC3) with the California Secretary of State listing Steven and

13  Brian Gallian as additional secured parties with respect to the Property (the "Second Steven and

14  Brian Transfer").  The UCC filings failed to perfect liens against the Property. The First Steven and

15  Brian Transfer and the Second Steven and Brian Transfer are collectively, the "Steven and Brian

16  Transfers".

17       43.    Steven and Brian Gallian paid no consideration for the Steven and Brian Transfers.

18       <u>Additional Postpetition Liens</u>

19       44.    In addition to the UCC Financing Statement Amendment (UCC3) filed on

20  December 4, 2020, with respect to Steven and Brian Gallian, on September 8, 2021, September 12,

21  2021, and September 24, 2021, the Debtor, individually and/or through J-Pad or J-Sandcastle,

22  purported to perfect or create additional liens on the Property in favor of J-Pad, Steven Gallian,

23  Brian Gallian, Justin Barclay, Ronald J. Pierpont, Robert J. McLelland, and E. J. Gallian by filing

24  multiple UCC Financing Statement Amendments (UCC3) with the California Secretary of State

25  listing J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, Mr. Pierpont, Robert J. Mclelland, and

26  E. J. Gallian as additional secured parties (collectively, the "Postpetition Transfers"). The UCC

27  filings failed to perfect liens against the Property.

28       45.    J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, Mr. Pierpont, Robert J.

McLelland, and E. J. Gallian paid no consideration for Postpetition Transfers or to be added as additional secured parties with respect to the Property.

46.     The J-Sandcastle Transfers, J-Pad Transfers, Steven and Brian Transfers, and the Postpetition Transfers are collectively referred to as the "Transfers".

47.     The Trustee is informed and believes, and based thereon alleges, that on the Petition Date, there existed in this case one or more creditors holding unsecured claims allowable under § 502 of the Code or that are not allowable only under § 502(e), that could have avoided the Transfers under applicable law.

## **FIRST CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550, and California Civil Code §§ 3439.04, 3439.07 and 3439.08)**

**(Against All Defendants)**

48.     Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

49.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor made the Transfers with the actual intent to hinder, delay, or defraud one or more of her creditors.

50.     Pursuant to 11 U.S.C. §§ 544 and/or 548, California Civil Code § 3439.04(a), and other applicable law, Plaintiff is entitled to avoid the Transfers as not being perfected or as fraudulent.

51.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the Transfers from the initial transferees and any subsequent transferees.

52.     Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value thereof, plus interest thereon at the maximum legal rate.

53.     Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad, plus interest thereon at the maximum legal rate.

54.     Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided Transfers, including title to and liens against the Property, are preserved for the benefit of the

1    Debtor's estate.

2

3                          <u>**SECOND CLAIM FOR RELIEF**</u>

4    **(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

5                     **and California Civil Code §§ 3439.05, 3439.07 and 3439.08)**

6                                    **(Against All Defendants)**

7            55.    Plaintiff refers to and incorporates herein by reference each and every allegation

8    contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

9            56.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor

10   received less than a reasonably equivalent value in exchange for the Transfers.

11           57.    Plaintiff is informed and believes, and based thereon alleges, that at the time the

12   Transfers were made, the Debtor was either insolvent or became insolvent as a result of the

13   Transfers.

14           58.    Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil

15   Code California Civil Code §§ 3439.05 and 3439.07, and other applicable law, Plaintiff is entitled

16   to avoid the Transfers as not being properly perfected or as fraudulent.

17           59.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the

18   Transfers from the initial transferees and any subsequent transferees.

19           60.    Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value

20   thereof, plus interest thereon at the maximum legal rate.

21           61.    Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-

22   Pad, plus interest thereon at the maximum legal rate.

23           62.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided

24   Transfers, including title to and liens against the Property, are preserved for the benefit of the

25   Debtor's estate.

26

27

28

1719769.2  27064                                    9

0076

**THIRD CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

**and California Civil Code §§ 3439.04(a), 3439.07, and 3439.08)**

**(Against all Defendants)**

63.     Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, and paragraph 56, of this Complaint as though fully set forth herein.

64.     Plaintiff alleges that at the time of the Transfers, the Debtor was engaged, or was about to engage, in business or a transaction or transactions for which her remaining assets were unreasonably small in relation to the business or transaction.

65.     Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil Code California Civil Code §§ 3439.05 and 3439.07, and other applicable law, Plaintiff is entitled to avoid the Transfers as either not being properly perfected or as fraudulent.

66.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the Transfers from the initial transferees and any subsequent transferees.

67.     Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value thereof, plus interest thereon at the maximum legal rate.

68.     Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad, plus interest thereon at the maximum legal rate.

69.     Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided Transfers, including title to and liens against the Property, are preserved for the benefit of the Debtor's estate.

**FOURTH CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

**and California Civil Code §§ 3439.04(a), 3439.07, and 3439.08)**

**(Against all Defendants)**

70.     Plaintiff refers to and incorporates herein by reference each and every allegation

0077

contained in paragraphs 1 through 47, inclusive, and paragraph 56, of this Complaint as though fully set forth herein.

71.    Plaintiff alleges that the Debtor intended to incur, or believed or reasonably should have believed that she would incur, debts that would be beyond her ability to pay as such debts became due.

72.    Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil Code California Civil Code §§ 3439.04(a) and 3439.07, and other applicable law, Plaintiff is entitled to avoid the Transfers as either not being properly perfected or as fraudulent.

73.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the Transfers from the initial transferees and any subsequent transferees.

74.    Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value thereof, plus interest thereon at the maximum legal rate.

75.    Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad, plus interest thereon at the maximum legal rate.

76.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided Transfers, including title to and liens against the Property, are preserved for the benefit of the Debtor's estate.

**FIFTH CLAIM FOR RELIEF**

**(To Avoid and Recover Postpetition Transfers under 11 U.S.C. § 549(a))**

**(Against All Defendants)**

77.    Plaintiff hereby incorporates by this reference all of his allegations in Paragraphs 1 through 76, inclusive, of this Complaint as though fully set forth herein.

78.    The Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers were not authorized under the Bankruptcy Code or by the Court.

79.    Pursuant to § 549 of the Code, the Trustee is entitled to avoid the Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers.

80.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, any liens

relating to Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers are
preserved for the benefit of the Debtor's estate.

## SIXTH CLAIM FOR RELIEF

### (For Declaratory Relief)

### (Against All Defendants)

81.     Plaintiff hereby incorporates by this reference all of his allegations in Paragraphs
1 through 80, inclusive, of this Complaint as though fully set forth herein.

82.     An actual controversy exists in that Plaintiff contends that the Defendants do not
have valid, perfected, and unavoidable liens on the Property.

83.     Pursuant to 11 U.S.C. § 544(a)(2) and other applicable law, the Trustee is entitled to
a judgment determining that the Defendants do not have valid, perfected, and unavoidable liens on
the Property.

## SEVENTH CLAIM FOR RELIEF

### (For Turnover – 11 U.S.C. § 542)

### (Against all Defendants)

84.     Plaintiff refers to and incorporates herein by reference each and every allegation
contained in paragraphs 1 through 83, inclusive, of this Complaint as though fully set forth herein.

85.     Upon avoidance, recovery, and preservation, the Property will be property of the
Debtor's bankruptcy estate.

86.     The Trustee may use, sell, or lease the Property under 11 U.S.C. § 363.

87.     Pursuant to 11 U.S.C. § 542, the Trustee is entitled to the turnover by the
Defendants of the Property.

0079

## **EIGHTH CLAIM FOR RELIEF**

### **(For Breach of Contract)**

### **(Against J-Pad)**

88.     Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 87, inclusive, of this Complaint as though fully set forth herein.

89.     Plaintiff alleges that the Debtor loaned $225,000 to J-Pad.

90.     Plaintiff alleges that the Debtor performed all of the terms and obligations on her part to be performed with respect to the terms of such loan.

91.     Plaintiff alleges that J-Pad has defaulted under the terms of the loan including, without limitation, its failure to repay all amounts owed.

92.     As of the date hereof, the outstanding principal balance owed to the Debtor by J-Pad is $225,000, plus interest.

## **NINTH CLAIM FOR RELIEF**

### **(To Avoid Unjust Enrichment)**

### **(Against J-Pad)**

93.     Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, of this Complaint as though fully set forth herein.

94.     Plaintiff alleges that as a result of the J-Pad Transfers, J-Pad has been unjustly enriched, so that Plaintiff is entitled to recover from J-Pad money, in a sum of not less than $225,000, plus interest.

## **TENTH CLAIM FOR RELIEF**

### **(To Avoid Unjust Enrichment)**

### **(Against J-Pad)**

95.     Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 94, inclusive, of this Complaint as though fully set forth herein

96.     J-Pad owes the Debtor the principal sum of $225,000 for money had and received

by J-Pad from the Debtor.

97.    The Trustee is entitled to recover damages from J-Pad in the sum of not less than $225,000, plus interest.

WHEREFORE, the Plaintiff prays for judgment against the Defendants as follows:

ON THE FIRST THROUGH FOURTH CLAIMS FOR RELIEF:

1.    For judgment in favor of the Plaintiff and against the Defendants avoiding the Transfers;

2.    For a judgment in favor of the Plaintiff and against all transferees for the Trustee to recover the transferred property;

3.    For a judgment in favor of the Plaintiff and against J-Sandcastle for the Trustee to recover the Property from J-Sandcastle;

4.    For a judgment in favor of the Plaintiff and against J-Pad for the Trustee to recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad;

5.    For a judgment in favor of the Plaintiff and against the Defendants preserving any avoided Transfers, including title to and liens against the Property, for the benefit of the Debtor's estate.

6.    For an award of interest at the legal rate on all sums awarded to Plaintiff from and after the date of the Transfers.

ON THE FIFTH CLAIM FOR RELIEF:

7.    For judgment in favor of the Plaintiff and against the Defendants avoiding and recovering the Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers;

8.    For a judgment in favor of the Plaintiff and against the Defendants preserving any liens relating to the J-J-Pad Transfers, Steven and Brian Transfers, and the Postpetition Transfers for the benefit of the Debtor's estate.

ON THE SIXTH CLAIM FOR RELIEF:

9.    For a judgment determining that the Defendants do not have valid liens on the Property.

ON THE SEVENTH CLAIM FOR RELIEF:

     10.    For a judgment for turnover of the Property to the Trustee.

ON THE EIGHTH, NINTH, AND TENTH CLAIMS FOR RELIEF:

     11.    For the sum of $225,000, together with interest thereon as allowed by contract and law.

ON ALL CLAIMS FOR RELIEF:

     12.    For costs of suit incurred herein; and

     13.    For all other and further relief as the Court deems just and proper.

DATED:  June 30, 2023          DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:     /s/ Aaron E. de Leest

AARON E. DE LEEST
Attorneys for Plaintiff Jeffrey I. Golden, Chapter 7
Trustee

1719769.2  27064

15

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>JEFFREY I. GOLDEN, Chapter 7 Trustee | DEFENDANTS J-SANDCASTLE CO., LLC; J-PAD LLC;<br>STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN<br>BARCLAY; RONALD J. PIERPONT; ROBERT J.<br>MCLELLAND; AND E. J. GALLIAN |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>DANNING, GILL, ISRAEL & KRASNOFF, LLP<br>1901 AVENUE OF THE STARS, SUITE 450<br>LOS ANGELES, CA  90067-6006          310-277-0077 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1)TO AVOID AND RECOVER FRAUDULENT TRANSFERS; (2) TO AVOID AND RECOVER
POSTPETITION TRANSFERS; (3) FOR DECLARATORY RELIEF; (4) FOR BREACH OF CONTRACT; (5)
FOR MONEY HAD AND RECEIVED; AND (6) UNJUST ENRICHMENT

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
    actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $  225,000 |

Other Relief Sought

0083

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>JAMIE LYNN GALLIAN | BANKRUPTCY CASE NO.<br>8:21-bk-11710-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>SANTA ANA | NAME OF JUDGE<br>SCOTT C. CLARKSON |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Aaron E. de Leest | | |
| DATE<br>JUNE 30, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Aaron E. de Leest | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 16222 Monterey Lane #376 Huntington Beach CA 92649

A true and correct copy of the foregoing document entitled (*specify*): OPPOSITION TO GABLES HOA MOTION TO CONTINUE PRETRIAL TO OCTOBER 22, 2024; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF JAMIE LYNN GALLIANIN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) June 5, 2024 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
⊠ Service information continued on attached page.

**2.  <u>SERVED BY UNITED STATES MAIL</u>**:  On July 5, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by causing to be placed a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state** <u>method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 5, 2024 | Ron Pierpont | *Ronald J. Pierpont* |
| *Date* | *Printed Name* | *Signature* |

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Bradford Barnhardt**    bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,kfrederick@ecf.courtdrive.com

- **Aaron E. DE Leest**    adeleest@DanningGill.com,
  danninggill@gmail.com;adeleest@ecf.inforuptcy.com

- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

- **Jeffrey I Golden (TR)**    lwerner@go2.law,
  jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

- **Brandon J Iskander**    biskander@goeforlaw.com, kmurphy@goeforlaw.com

- **Eric P Israel**    eisrael@danninggill.com,
  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- **Mark A Mellor**    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

- **Valerie Smith**    claims@recoverycorp.com

**United States Trustee (SA)**
**ustpregion16.sa.ecf@usdoj.gov**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**